REAL ESTATE CORPORATION OF NEW YORK CITY, Appellant, *v.* J. HENRY HARPER, as Executor of MARY S. HOE, Deceased, Respondent.

1. NEW YORK, CITY OF — WHEN ASSESSMENT FOR LOCAL IMPROVEMENT BECOMES A LIEN — COVENANT AGAINST INCUMBRANCES. The Greater New York charter (L. 1897, ch. 378, §§ 159, 986, 1017) authorizes partial confirmation of assessments for local improvements for the purpose of limiting appeals and settling rights *pro tanto,* and a full confirmation for the purpose of establishing the lien of the assessment when perfected by entry of record in the offices designated, and the assessment becomes a lien upon the property affected from the time of such entry; a covenant in a deed, therefore, of property in the city of New York, in the borough of The Bronx, that the premises conveyed were "then free from incumbrances," is not broken by the fact that at the date of the delivery of the deed the premises were subject to an assessment for a local improvement which had not been fully confirmed and an entry thereof made in the proper office.

2. COSTS — RIGHT TO, MAY BE WAIVED BY THE PARTIES TO THE SUBMISSION OF A CONTROVERSY — CODE CIV. PRO. § 1279. While under section 1279 of the Code of Civil Procedure, providing for the submission of a controversy, the award of costs is discretionary with the court, either party may waive his right to have the court exercise its discretion in his favor, and when it is stipulated that the judgment rendered shall be "without costs" a judgment with costs should be modified by striking them out.

*Real Estate Corporation* v. *Harper,* 70 App. Div. 64, modified.

(Argued February 20, 1903; decided March 17, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 16, 1902, in favor of defendant upon the submission of a controversy under section 1279 of the Code of Civil Procedure.

Mary S. Hoe, the original defendant, died after the agreed case had been filed, and by an order duly made her executor J. Henry Harper was substituted and the action continued against him in his representative capacity. Further facts appear in the opinion.

*Francis B. Chedsey* for appellant. As between the grantor and grantee in a deed conveying land, an assessment against the grantor for benefit to the land conveyed and which has been judicially fixed and determined, is the debt of the grantor and a charge upon the land within the meaning of a covenant against incumbrances, although it has not become a lien for the purposes of the statute under which it was made. (*De Peyster* v. *Murphy*, 66 N. Y. 622; *Lathers* v. *Keogh*, 109 N. Y. 583; *Harper* v. *Dowdney*, 113 N. Y. 644; *McLaughlin* v. *Miller*, 124 N. Y. 515; L. 1882, ch. 410, § 915; L. 1853, ch. 579, § 6; L. 1871, ch. 381, § 1; *Mayor, etc.,* v. *Colgate*, 12 N. Y. 140; Code Civ. Pro. § 190.) The plaintiff had a right to pay and discharge the assessment without notice to or request from the defendant's testatrix. (*Dolan* v. *Mayor, etc.,* 62 N. Y. 472; *McGuckin* v. *Milbank*, 83 Hun, 473.) Notwithstanding the provisions in section 1281 of the Code of Civil Procedure relating to actions of this kind, that " the costs thereof are always in the discretion of the court," the parties to the submission had the power by express stipulation to limit or control the exercise of that discretion, and it was error for the court to grant costs in violation of the provision in the submission upon that subject. (*Kingsland* v. *Mayor, etc.,* 42 Hun, 599; *Fish* v. *Coster*, 28 Hun, 64.)

*Robert E. Deyo* for respondent. The assessment was not a lien or charge when the deed was delivered. (*De Peyster* v.

*Murphy,* 66 N. Y. 622 ; *Lathers* v. *Keogh,* 109 N. Y. 583 ; *Fisher* v. *Mayor, etc.,* 67 N. Y. 73 ; *Harper* v. *Dowdney,* 113 N. Y. 644.) The assessments for benefit were not confirmed by the Appellate Division order. (*Matter of Whittier St.,* 162 N. Y. 658 ; *Matter of Central Park,* 60 Barb. 132 ; *Platt* v. *N. Y. & S. B. R. R. Co.,* 63 App. Div. 501 ; 2 Rumsey's Pr. 673 ; *Colburn* v. *Morton,* 3 Keyes, 296 ; *Kelsey* v. *Western,* 2 N. Y. 500, 505 ; *Robertson* v. *Bullion,* 11 N. Y. 243 ; *Sands* v. *Codwise,* 4 Johns. 536 ; *Cruger* v. *Cruger,* 5 Barb. Ch. 225 ; *Clapp* v. *McCabe,* 84 Hun, 379 ; *Morse* v. *Williamson,* 35 Barb. 472.) The report was not confirmed until after the delivery of the deed. (*Matter of Anthony Street,* 20 Wend. 618.) The judgment for costs was proper. (*Landon* v. *Walmuth,* 76 Hun, 271.)

VANN, J. On the 23rd of January, 1900, the defendant's testatrix, pursuant to a contract dated December 9, 1899, and in consideration of $650,000, conveyed to the plaintiff a tract of land in the borough of The Bronx by a deed containing a covenant that it was then " free from incumbrances."

The plaintiff claims that at the time the deed was delivered certain parcels of said land were subject to " an assessment for benefit" imposed in a proceeding taken to open Whittier street in said borough. The defendant claims that at the date of delivery the assessment had not been fully confirmed and, hence, was not a lien or charge upon any part of the premises conveyed. The Appellate Division, by a divided vote, sustained the position of the defendant, and from the judgment rendered in his favor accordingly the plaintiff appealed to this court.

The proceeding to open said street was commenced in August, 1895, and the title to the land sought to be acquired for the purpose vested in the city of New York on the 23rd of April, 1896, in accordance with a resolution of the board of street openings and improvements, but no part of the land taken belonged to the defendant's testatrix.

On the 24th of December, 1897, the commissioners of esti-

mate and assessment, appointed pursuant to statute, made their report in which many lots of land were assessed for benefit to various owners, including a portion of the premises subsequently conveyed by the defendant's testatrix to the plaintiff as aforesaid, which " was assessed in her name for benefit, $3,868.87." On the 30th of December, 1897, said report was presented to the Supreme Court at Special Term for confirmation, and on the 25th of February, 1898, an order was entered confirming the report " with respect to the awards for damages therein set forth," but denying the motion to confirm with respect to the assessment made upon two lots known as 14 and 16, and sending the report back to the commissioners with directions to apportion the assessments upon those lots. The motion to confirm the report " with respect to the assessments for benefit " was denied and the report referred to the commissioners, with directions that they should " make the assessments for benefit in no case more than one-half of the valuation of the property assessed as valued by the tax commissioners for the purpose of taxation for the year 1896." No part of the land so conveyed by the defendant's testatrix was contained within the area designated by lots 14 and 16 mentioned in said order.

The city of New York appealed from all of said order except that part which confirmed the awards for damages and that part which related to lots 14 and 16.

On the 29th of December, 1899, the Appellate Division reversed so much of the order as was appealed from and confirmed the report of the commissioners in all respects. One of the property owners affected appealed from the order of the Appellate Division to the Court of Appeals, but on the 1st of May, 1900, the order was affirmed.

On the 18th of July, 1900, which was after the order of this court had been made the order of the Supreme Court, the commissioners made an amended and supplemental report by which they apportioned the assessment between lots 14 and 16, and, upon request, but without any order of the court, they also apportioned the assessment between the owners of

another parcel.  They reported that "in all other matters" their previous report was "in all respects unchanged."  None of the lands owned or conveyed by the defendant's testatrix were affected by said apportionment.  The supplemental report was confirmed by the Supreme Court at Special Term on the 15th of August, 1900, and on the 4th of October following "the lists of said assessments, as assessments confirmed, were entered of record in the office of the comptroller of the City of New York, with the date of confirmation as of August 15th, 1900."  On the same day "the title of such assessments, with the date of confirmation as of August 15th, 1900, was entered in the record of the title of assessments confirmed, kept in the office of the collector of assessments and arrears."  The amount so entered against the defendant's testatrix was $3,868.87, and the plaintiff having paid the same on December 3rd, 1900, thereafter demanded from her the amount so paid, which she refused to pay.  The plaintiff paid as aforesaid, "without notice to or request from" her, and she did not know of the claim made that she was "liable therefor until after such payment."

The covenant "that the said premises are free from incumbrances" is required by statute to be "construed as meaning that such premises are free, clear, discharged and unincumbered of and from all former and other gifts, grants, titles, charges, estates, judgments, taxes, assessments, liens and incumbrances, of what nature or kind soever."  (Real Prop. Law, L. 1896, ch. 547, § 218, sub. 3.)  If said assessment was a charge or lien on the 23rd of January, 1900, the date of the conveyance in question, the covenant against incumbrances, which operates *in præsenti*, was broken the instant it was made.  If, however, the assessment did not become a charge or lien until the 15th of August, 1900, when the final report was confirmed, or until the 4th of October, 1900, when the lists of assessments were entered in the office of the comptroller and of the collector, there was no breach of the covenant and the plaintiff is not entitled to recover.  The question can be solved only by reading the statute under which the assessment was made,

so far as it relates to the subject of assessments and the lien thereof.

Provision is made for the confirmation of assessments for local improvements by section 986 of the charter of the city of New York, which provides that the Supreme Court may confirm the report of the commissioners " in whole or in part " and that " the same or a part thereof " may be referred to the commissioners " for revisal and correction." Upon the return of the report " or such part thereof, corrected and revised," it may " be confirmed or again referred by the said court in manner aforesaid, as right and justice shall require, and so from time to time until a report shall be made or returned in the premises, which the said court shall wholly confirm, and such report, when so confirmed by the said court, shall, unless set aside or reversed on appeal, be final and conclusive " upon all concerned. (L. 1897, ch. 378, § 986; L. 1882, ch. 410, § 990.)

Duplicate copies of the report must be filed by the corporation counsel, one in the office of the comptroller and the other in the office of the clerk of the Supreme Court, where the order confirming said report is entered. (Id. §§ 987, 991.)

The city, or any person affected by the proceeding and aggrieved by the report when confirmed, may appeal to the Appellate Division. An appeal, however, does not stay proceedings except as to the particular real estate with which the appeal is concerned and the order of confirmation is deemed final and conclusive upon all who have not appealed. (Id. § 988.)

While by section 1004 of the charter and section 995 of the Consolidation Act all sums assessed are made liens upon the lands mentioned, and the owners and occupants thereof are made liable to pay the same on demand, neither of said sections provide when the lien shall take effect. That subject is covered by section 915 of the earlier act and 1017 of the later, which is as follows : " All taxes and all assessments for local improvements and all water rents, and the interest and charges thereon, which may, in the City of New York

as by this act constituted, hereafter be laid or may have heretofore been laid, upon any real estate now in said city, shall continue to be, until paid, a lien thereon, and shall be preferred in payment to all other charges. No assessments for any local improvement shall be deemed to be fully confirmed, so as to be due and be a lien upon the property included in the assessment, until the title thereof, with the date of confirmation shall be entered with the date of such entry, in a record of the titles of assessments confirmed, to be kept in the office of the collector of assessments and arrears."

Section 159, the only other section referred to by counsel, provides that "there shall be kept in the office of the comptroller a full and complete record, in detail, of all lists of assessments confirmed, whether by the Supreme Court" or otherwise, "with the date of confirmation and the date of entry under such record. * * * An assessment shall become a lien upon the real estate affected thereby, immediately upon its entry in the said record. If any such assessment list affects property situated in any borough, other than the borough of Manhattan, a copy of such list shall forthwith be transmitted to and filed in the office of the collector of assessments and arrears in the borough in which is situated the property so affected."

The statute, as we read it, authorizes partial confirmation, for the purpose of limiting appeals and settling rights *pro tanto*, and a full confirmation for the purpose of establishing the lien of the assessment, when perfected by entry of record in the offices designated. A clear distinction was made by the legislature between the effect of a confirmation "in part" and a "full" confirmation. As to the former, the effect is not entirely specified, but is left to the determination of the courts. As to the latter, however, the effect is not left open to construction, but is distinctly settled by the command that "no assessments for any local improvements shall be deemed to be fully confirmed, so as to be due and be a lien upon the property included in the assessment, until the title thereof, with the date of confirmation shall be entered" in the proper

offices. (§ 1017.) The statute emphasizes the command by providing in another section that the " assessment shall become a lien  *   *   *   immediately upon its entry in said record." (§ 159.) There is an obvious reason for this distinction, which doubtless influenced the legislature in making it. While a partial confirmation may effect various useful objects, some of which have been suggested, it is not definite enough for the safety or convenience of landowners in handling their property, because it would frequently require a careful analysis of an order of the court, expressed in technical terms, to see what part of a long and complicated report, embracing several main subjects and a great number of details, was confirmed and what part left open. Professional advice would usually be required, and even then the owner might be in peril until the matter had passed through the courts. The legislature evidently did not intend that transfers should be thus hampered by doubt, or that freedom of contract with reference to real property should be hindered by an obstacle easily removed by a definite rule. It was not intended that valuable land should be tied up by a lien of uncertain duration, with no one authorized to accept payment or give a discharge. So important a question, as when an assessment becomes a lien, should not be open to doubt, but should be so certain that even the unlearned can tell by the simple examination of a record in a public office. Owing to the importance of the subject to conveyancers and to the public generally, the legislature, as we think, took care to provide a definite time when an assessment should become a lien and an easy method of ascertaining it. They named the date when the assessment should become due and " be a lien," and specified the office where the record of the date and amount of the lien should be kept. If the assessment affects real property situated in any borough other than the borough of Manhattan, a copy of the list is required to be filed in an office kept in the borough where the property so affected is situated. This is for the purpose of convenience in examination, so that vendors and purchasers of real estate can ascertain in a moment

whether there is a lien upon the property that is the subject of negotiation. We think that the assessment in question did not become a lien upon any part of the premises conveyed until the 4th of October, 1900, when the lists were entered of record in the office of the comptroller, which was after the delivery of the deed from the defendant's testatrix to the plaintiff.

We are referred by the appellant to *De Peyster* v. *Murphy* (66 N. Y. 622), but that case arose under a different statute, and in view of what we said in *Lathers* v. *Keogh* (109 N. Y. 583, 589) we regard further comment thereon as unnecessary.

While we agree with the conclusion reached by the Appellate Division upon the merits of the controversy, and concur in the arguments with which they support their determination, we are constrained to differ from that learned court in one respect. The submission provided for a judgment to be rendered in favor of the successful party, "without costs," but judgment was inadvertently rendered in favor of the defendant, with costs. The statute authorizing the submission provides that the "costs thereof are always in the discretion of the court." (Code Civ. Pro. § 1281; *People* v. *Fitchburg R. R. Co.*, 133 N. Y. 239.) While parties cannot by agreement compel the award of costs, we think they may waive the allowance of costs, the same as they can waive many legal rights. The object of the agreed case, as authorized by statute, is to settle the facts by a convenient substitute for a special verdict, in order that the court may apply the law thereto and render judgment accordingly. Costs are a mere incident, resting in the discretion of the court. While neither party has any right to costs unless the court awards them, either party may waive his right to have the discretion of the court exercised in his favor by allowing him costs. A party may waive any benefit or advantage unless public policy forbids and the courts have no policy to enforce in regard to the waiver of such a contingent and incidental right as the allowance of costs upon the friendly submission of a controversy.

The judgment should be modified by striking therefrom the costs as allowed and taxed in favor of the defendant, and as thus modified affirmed, without costs to either party.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT, HAIGHT and CULLEN, JJ., concur.

Judgment accordingly.