## MORRIS v. BOARD OF EDUCATION OF CITY OF NEW YORK.

(Supreme Court, Appellate Term. June 6, 1907.)

1. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—TEACHERS IN EVENING SCHOOLS—EMPLOYMENT.

A teacher in an evening school is not a public officer, nor is he within Laws 1900, p. 1605, c. 751, fixing the minimum salary of a day school teacher; but he is employed to perform services for such compensation as is fixed in the contract, and in the absence of any agreement as to compensation, he can only recover what his services are reasonably worth.

2. SAME.

The board of education of the city of New York appointed a teacher to the position of teacher in an evening school. The notice of appointment merely fixed the time of service. The teacher accepted the appointment. Held, that both parties entered into the contract with knowledge of the powers of the board, and the teacher could not complain of the board reducing the compensation in the manner prescribed by its by-laws.

3. SAME.

The by-laws of the board of education of the city of New York provided that teachers in evening schools should be paid $5 for each evening, authorized the establishment of evening schools, and when the average attendance of any class should be less than a specified number each hour the committee might discontinue the class and discharge the teacher. Held, that the board of education had the power to change the compensation of a teacher in an evening school.

4. SAME.

The by-laws of the board of education of the city of New York authorized the establishment of evening schools, and provided for the dis-

continuance of classes and the discharge of teachers. The salary of teachers in evening schools was fixed at $5 for each evening. None of the by-laws could be suspended or repealed, except by a vote of two-thirds of the members of the board. A by-law provided that there should be a committee on by-laws, and every proposed amendment should be referred to it. *Held,* that the board of education could, by a unanimous vote, reduce the salaries of the teachers in the evening schools without referring the resolution therefor to the committee on by-laws.

Appeal from Municipal Court, Borough of Manhattan, Fourteenth District.

Submission of an agreed controversy, pursuant to Municipal Court Act, Laws 1902, p. 1560, c. 580, § 241, between George Morris and the board of education of the city of New York. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before GILDERSLEEVE, P. J., and FITZGERALD and GOFF, JJ.

Warner, Johnson and Galston & Wilson (Clarence G. Galston, of counsel), for appellant.

William B. Ellison (Theodore Connoly and Thomas F. Noonan, of counsel), for respondent.

GOFF, J. On June 24, 1903, the plaintiff received the following notice:

"Upon the nomination of the board of superintendents, you have been appointed to the position of mathematics teacher in the evening high school for men, to be held in Boys High School, borough of Brooklyn, for the term 1903–1904, to take effect from the beginning of service."

He commenced such service in September following, and received therefor $5 "for each evening of actual service." On December 23, 1903, the board of education passed a resolution fixing his salary from January 1, 1904, at $4, instead of $5, an evening. For the difference plaintiff brought this action in the Municipal Court. The case was submitted on an agreed statement of facts. Judgment was rendered against him, and from that judgment he now appeals.

A teacher in an evening school is in no sense a public officer, nor is the compensation which he receives a salary fixed by law as an incident to an office. Gunnison v. Board of Education, 176 N. Y. 11, 68 N. E. 106. Nor is he within the scope of the law which fixes the salary of a day school teacher at a minimum. Chapter 751, p. 1605, Laws 1900. He is simply employed to perform certain services, for which he is to receive certain compensation, and what that compensation is must be ascertained from the contract, express or implied. Eckerson v. City of New York, 80 App. Div. 12, 80 N. Y. Supp. 168, affirmed 176 N. Y. 609, 68 N. E. 1115. The appointment of plaintiff and his acceptance constitutes a contract, and to that contract recourse must be had to ascertain what its terms were. If no terms were mentioned, an implied obligation rested on the board to pay plaintiff what his services were reasonably worth. If terms and conditions were mentioned, both parties were bound by them. In the notice of appointment no mention is made of terms or conditions. All that is referred to is the period of time fixed for the engagement; and, such

being the case, the parties must be held to have entered into the contract with a knowledge of their respective characters and powers. The board knew that the plaintiff was entitled to receive compensation for his services, and the plaintiff that the board was not a proper person making a contract for its own benefit, but was an agency of the state, acting as trustee of the public moneys for a specific purpose under provisions of law which prescribed its powers and duties and the contracts which it could make.

It is not disputed that the board had the power to make by-laws and regulations for the orderly conduct of the vast interests committed to its charge, and in the absence of a specific agreement in the contract of employment as to rate of compensation these by-laws and regulations, as far as they are applicable, must be read into the contract. Buckbee v. Board of Education, 115 App. Div. 366, 100 N. Y. Supp. 943. At the time of the employment, section 64 of the by-laws (schedule 20) provided that teachers in evening schools should be paid $5 for each evening of actual service. It is this provision that the plaintiff relies upon as forming the contract, and he contends that the compensation so specified could not be altered or changed, or fixed at any lesser sum. If that be true, it would involve the corollary that the board has no power to change its by-laws, and that they were fixed and inflexible as far as this contract was concerned, and it would inevitably follow that the contention is sound. To determine this question it becomes necessary to examine the whole body of the by-laws, and the plaintiff cannot content himself by selecting one and standing upon that alone. He must, as has already been observed, read them all as far as applicable into his contract. An evening school is not a common school. Therefore there is nothing constitutional in its character. Section 1, art. 9, Const. The statute giving the board of education power to establish and conduct evening schools (section 1069 of the charter [Laws 1901, p. 456, c. 466]) makes no mention of salaries or duties of the teachers, and the power thus conferred on the board "involved the exercise of judgment and discretion in the establishment and management of the schools." Cusack v. Board of Education, 174 N. Y. 136, 66 N. E. 677. It was provided by section 55 of the by-laws that:

"Evening schools shall be established in such school buildings and other places as the committee on special schools upon the recommendation of the board of superintendents shall determine."

And by subdivision 5 of the section that:

"When the average attendance of any class for the period of two weeks shall be less than fifteen each hour, the committee on special schools shall have power in its discretion to discontinue said class and to discharge the teacher."

Taking these provisions in connection with the one fixing the compensation for each night of actual service, it is clear that for lack of pupils the teacher might be discharged, and, if the power of discharge was reserved, may it not be fairly inferred that the power to fix a different rate of compensation was also reserved. Section 111 of the by-laws provided that:

"None of these by-laws shall be suspended, repealed or amended at any meeting except by a vote of two thirds of all the members of the board."

Under this by-law, section 64, fixing the compensation could be suspended, repealed, or amended, and the plaintiff would be bound by whatever the result. Thus, if the by-law was repealed, there would be no longer any authority for his compensation, and his employment would necessarily cease. If the power was vested in the board to abolish the position altogether, surely it had the power to change the rate of compensation; and that it had the power to suspend, alter, or amend its by-laws there can be no question, for it is an inherent power which can be exercised in the absence of any law prohibiting it. It was said in the Cusack Case, supra:

"If the relator's contractual right was affected by the provision of the statute giving to this board the power to abolish that provision entirely, that provision must be read into her contract and made a part thereof. It cannot be said that reserving power to change a salary, after it is once fixed, is as great an invasion of vested rights as reserving the power to abolish the position, and so destroy the right entirely."

By section 22 of the by-laws it was provided that "the committee on special schools shall have charge of all matters relating to evening schools," and by section 12 that the executive committee "shall report to the board in December of each year a plan for apportioning the general school fund among the various objects of expenditures included in said fund." On December 16, 1903, the executive committee passed a resolution appointing a special committee of seven to investigate the condition of the finances for the years 1903–1904. On December 23, 1903, this committee presented to the board the following resolutions:

"Resolved, that for the year 1904 the sessions of the evening schools be reduced one-fourth in number, and that salaries of teachers in said schools be reduced in accordance with the recommendation of the board of superintendents as follows: Teachers in high schools, $5 to $4 per night—and that the allowance for the cost of evening, elementary, and high school be limited to $433,715 for the year 1904.

"Resolved, that all by-laws or parts of by-laws inconsistent with the foregoing resolutions be, and the same hereby are, suspended for the purpose of said resolutions."

This resolution was unanimously adopted by the members of the board. According to section 111 this resolution, in order to be validly adopted, required a two-thirds vote of all the members of the board. Thirty-one make two-thirds. There were 41 members present who voted for the resolution. When it is taken into consideration that the duty of the special committee was to apportion the general school fund, it can be readily perceived, from the resolution reported and adopted, that the plan proposed was in the interest of retrenchment and economy, and for the limitation of expenditure for the year 1904. In adopting this resolution, the board clearly was properly exercising its discretion in the use of public moneys; and plaintiff, when he entered upon his employment, accepted as a condition thereof that, in the exercise of its discretion, the board might not only terminate his employment, but alter and fix the rate of compensation at whatever rate per night it deemed proper and just. No statement is made by plaintiff that because of the $5 rate of compensation he was induced to accept the appointment, or that but for his employment he could

have earned that or a greater sum. The real gist of his complaint is, not that he has been damaged, but that the board of education is indebted to him on an express contract.

In Murphy v. Board of Education, 87 App. Div. 277, 84 N. Y. Supp. 380, it was said:

"The broad power thus given to the school boards and the board of education to appoint all teachers and to fix their salaries, and to make by-laws for the regulation of all disbursements of the general school fund in the borough, would give the school board power to reduce the salary of any teacher, either by an actual reduction in the amount paid, or by providing that the salary of a teacher shall be paid only for the period during which the teacher actually performed service. A teacher being an employé and his relation to the appointing power contractual, nothing stands in the way of a revisal of his compensation by the authorities having power to fix the salary to be paid to the teacher at any time."

Strictly speaking, the plaintiff's salary was not reduced. He never had a salary, and therefore it could not be reduced. He was paid a certain sum of money in compensation for each night's actual service that he rendered. The board had the power at any time to change or alter that compensation, and the plaintiff, when he entered upon his employment, did so with knowledge, and as part of his contract, that the board had such power, and that it could be exercised at any time during the term of employment.

A further contention of the plaintiff is that the resolution of December 23d, which suspended section 64 altering the rate of compensation, was an amendment of the by-laws, or, if not, an amendment; that it was legislation affecting the department; and that consequently the resolution, in conformity with the requirements of the by-laws, should have been referred and reported by it before final action could be taken. It was provided by section 13 of the by-laws that, of certain standing committees, there should be a "committee on by-laws and legislation," and by section 18 that:

"The committee on by-laws and legislation shall have charge of all matters relating to by-laws. To it shall be referred all legislation affecting the department of education. Every proposed amendment to the by-laws shall be referred to said committee, and no amendment shall be adopted until reported by said committee after such reference."

In view of the unanimous action of the board in adopting the resolution, this contention partakes of the narrow and the technical. But, even under the strict rule of construction invoked, it cannot be maintained. This resolution provided for an absolute suspension. It therefore could not be called an amendment to any existing by-law; neither was it legislation, for it did not enact a new by-law, or substitute one phrase of language for another. It was a resolution, born of the exigencies of the board's financial condition, and, since it was plainly for the purpose of regulating the finances, there is nothing in section 18, or any other section, of the by-laws, which requires such a resolution to be referred to the committee on by-laws. At all events the board having acted unanimously, such action must be taken as expressive of the opinion of all the members of the board of education; and, since the members of the committee on by-laws were members of the board of education, it must be taken that they joined in the

unanimous approval. It is an established principle of law that the board acted in good faith and that its act carried with it the stamp of regularity and legality. And it may be further observed that the language of the resolution was that all by-laws inconsistent with it should be suspended for its purpose, and, if there was any by-law requiring its reference to a committee on by-laws, that by-law was ipso facto by the resolution itself suspended. The conclusion is therefore irresistible that the board had the power to change the rate of compensation per night for the services rendered, that the plaintiff entered into his employment subject to and with knowledge and view of that power, and that such power was validly exercised by the board.

It is unnecessary to discuss the question of his acceptance under protest of a changed rate of compensation. The judgment should be affirmed, with costs to respondent.

Judgment affirmed, with costs. All concur.