Metropolitan Life Insurance Company, Appellant, *v.* Union Trust Company of Rochester, Defendant, and Abstract Title and Mortgage Corporation, Respondent.

Argued February 27, 1940; decided April 23, 1940.

*Eugene Van Voorhis, Frank Ewing, Francis J. Wier* and *Robert F. MacCameron* for appellant. The delivery of the assessment roll to the town clerk after the cost of the particular improvement had been apportioned against the properties within the assessed area, and after notice to property owners and hearing of objections to the assessment, and the assessment finally apportioned and confirmed, established a lien upon each of the properties assessed for the amount of the assessment apportioned against each of them, which the property owners then had the option of paying in full within a period of fifteen days or paying in annual installments if they so preferred, the debt meanwhile being carried by bond issue of the town. There was no power in the town board or board of supervisors to alter the assessment after it was finally confirmed. It thereupon became a lien against the real estate. (*Rundell* v. *Lakey*, 40 N. Y. 513; *Matter of Detmold*, 115 N. Y. 450; *Lewis* v. *Petersen*, 241 N. Y. 268; *People ex rel. Luther* v. *McDermott*, 265 N. Y. 47; *Getman* v. *Niferopulos*, 276 N. Y. 161; *Burr* v. *Palmer*, 53 App. Div. 358; *People ex rel. Griffin* v. *Mayor*, 4 N. Y. 419.) The word " charges " is a very broad term. It includes the liability to pay for the unpaid street improvements the amount of which had been determined and the assessments finally confirmed and the payments postponed for the convenience of the property owners. (*Darling* v. *Rogers*, 23 Wend. 490; *Bleecker* v. *Ballou*, 3 Wend. 263; *Merchants Exchange Nat. Bank* v. *Commercial Warehouse Co.*, 49 N. Y. 635; *New York* v. *Cushman*, 10 Johns. 97; *Griggs* v. *Banks*, 59 Ala. 311; *Holden* v. *Risom*, 77 Ala. 515; *DePeyster* v. *Murphy*, 66 N. Y. 622; *Lathers* v. *Keogh*, 109 N. Y. 583; *McLaughlin* v. *Miller*, 124 N. Y. 510; *Lewis* v. *Petersen*, 241 N. Y. 268; *Getman* v. *Niferopulos*, 276 N. Y. 161; *Eiseman* v. *Josephthal*, 71 Misc. Rep. 288; *Perkins* v.

*Smith,* 116 N. Y. 441.) The word " incumbrances " used in both forms of policy includes the assessments for street improvements in these properties. (*Huyck* v. *Andrews,* 113 N. Y. 81; *Kleinberg* v. *Ratett,* 225 App. Div. 208; *Cream City Mirror Plate Co.* v. *Swedish Bldg. & Loan Assn.,* 74 Ill. App. 362; *Fuller* v. *Wright,* 35 Mass. 403; *Mitchell* v. *Warner,* 5 Conn. 497; *Gilham* v. *Real Estate Title Ins. & Trust Co.,* 203 Penn. St. 24; *Friendly* v. *Ruff,* 61 Ore. 42; *Graybill* v. *Ruhl,* 225 Penn. St. 417; *Garber* v. *Stern,* 100 N. J. Eq. 470; *Glenmary Land Co.* v. *Stewart,* 217 Ky. 635; *Condorodis* v. *Kling,* 33 Ohio App. 452; *Coble* v. *Dick,* 1 N. C. 732.)

*Kenneth B. Keating, Howard M. Woods* and *Keith D. Poland* for respondent. No lien is created until the annual levy is made as provided in section 11 of chapter 549 of the Laws of 1926 and similar statutes, which in this case was subsequent to the policy date in each instance. (*Getman* v. *Niferopulos,* 276 N. Y. 161; *People ex rel. Oswego Falls Corp.* v. *Foster,* 251 App. Div. 65; 278 N. Y. 494; *Barlow* v. *St. Nicholas Nat. Bank,* 63 N. Y. 399; *United States* v. *City of Buffalo,* 54 Fed. Rep. [2d] 471; *Mayers* v. *Van Schaick,* 268 N. Y. 320; *Trenton Potteries Co.* v. *Title Guarantee & Trust Co.,* 176 N. Y. 65; *Doonan* v. *Killilea,* 222 N. Y. 399; *Empire Dev. Co.* v. *Title Guarantee & Trust Co.,* 225 N. Y. 53.) The word " charge," as used in certain policies, is synonymous with " lien " and " incumbrance," and a local assessment does not become an " incumbrance " before it becomes a " lien." (*Moller* v. *Peoples Nat. Bank,* 258 N. Y. 373; *Getman* v. *Niferopulos,* 276 N. Y. 161; *Empire Dev. Co.* v. *Title Guarantee & Trust Co.,* 225 N. Y. 53; *Trenton Potteries Co.* v. *Title Guarantee & Trust Co.,* 176 N. Y. 65; *Doonan* v. *Killilea,* 222 N. Y. 399; *Harper* v. *Dowdney,* 113 N. Y. 644; *McLaughlin* v. *Miller,* 124 N. Y. 510; *Real Estate Corp.* v. *Harper,* 174 N. Y. 123; *Lewis* v. *Petersen,* 241 N. Y. 268.) Title insurance is prospective in its operation and is intended to protect the insured against liens or incumbrances which became such prior to the date of the policy. (*Mayers* v. *Van Schaick,* 268 N. Y. 320.)

CONWAY, J. Plaintiff sues for a breach of provision in each of a number of policies of title insurance issued in September, 1929. After service of answer, defendant title company had summary judgment dismissing the complaint under rule 113 of the Rules of Civil Practice.

Taking the text of the policies in provision most favorable to plaintiff, they insured against " defects in, incumbrances upon or liens or *charges* against the title of the mortgagors or grantors to premises described in the mortgage or trust deed " existing at or prior to the date of the policy " and not excepted under Schedule ' B.' " This form of policy was suggested by plaintiff and the assessments hereafter referred to were not excepted. It is not claimed that these assessments were statutory liens at the time of the issuance of the policies but it is contended that they were *charges* and *incumbrances* within the meaning of those terms as used in the policies. The typical complaint alleges in paragraph Twelfth that the certificate and policy of insurance of defendant title company " did not state or mention that *future* assessments *would be* made against the said real estate on account of improvements already made which when made *would become* prior liens " to the mortgage purchased by plaintiff and that it was defendant's duty under its contract to do so.

The assessments came into being because of local improvements such as sewers, pavements and sidewalks, which had been constructed, under applicable statutes, in suburban property in certain towns in Monroe county outside the city of Rochester. The improvements had been completed one or two years prior to the issuance of the policies and paid for through bond issues of the several towns. The bonds were to be paid by annual assessments to be levied upon the individual properties benefited. The parties in their briefs have selected chapter 549 of the Laws of 1926 as the statute principally involved. The other statutes are substantially similar.

Taking as an example the town of Brighton, the minutes of the Town Board showed that on June 9, 1928, there was

considered the question of the apportionment of the cost of certain street improvements which had theretofore been made; that a proposed assessment roll, apportioning the expenses of the improvements upon the property benefited, having been prepared and submitted, was approved, and a date for the hearing of objections to the said roll was set and the Town Clerk ordered to give the notices required by law; that on June 25, 1928, the Board met for the purpose of hearing objections to said roll, and none having been made the roll and the apportionment therein made on the several lots was finally approved and adopted and the tax therein provided assessed.

Under chapter 549 of the Laws of 1926 the only power to *levy* assessments is found in section 11. It reads: " The town board shall thereafter in each year, and before the annual meeting for that year of the board of supervisors of the county in which such town is situated, report to said board of supervisors, the amount of such bonds, which will mature within the ensuing year; and the amount of interest payable within said ensuing year; and a statement of the lots or parcels of land liable to pay the same, and the amount chargeable to each. The board of supervisors shall levy such amounts against the property liable, and shall state the amount of the assessment in a separate column, in the annual tax roll, under the name ' street improvement;' and such assessment when collected shall be paid to the supervisor, and be by him applied in payment of the principal and interest of said bonds. The amount annually apportioned by the town board, as provided in this section, on any lot or parcel, *and included in the annual tax roll by said board of supervisors*, shall be a lien prior and superior to any lien or claim except the lien of an existing tax or local assessment."

The power of apportionment and assessment was conferred on the Town Board by section 9 of chapter 549 and permission granted a property owner to pay in full based upon such assessment, but there could be no *levy* and no *lien* until there was annual report by the Town Board of the

amount of bonds maturing during the ensuing year, with the amount of interest payable for the same period, followed by annual apportionment by the Town Board upon the lots and parcels liable therefor and *inclusion in the annual tax roll* by the Board of Supervisors of the county.

It is clear that there was no *lien* at the time of the issuance of the policies. The question remains, was there a charge or incumbrance? If we consider the insurance contract as analogous to a covenant against incumbrances, it is evident that in this State the word *charges* is used synonymously with liens and incumbrances. It has no larger meaning. In the Real Property Law (Cons. Laws, ch. 50, § 253) it is provided:

" 3. Freedom from incumbrances. A covenant ' that the said premises are free from incumbrances,' must be construed as meaning that such premises are free, clear, discharged and unincumbered of and from all former and other gifts, grants, titles, *charges*, estates, judgments, taxes, assessments, liens and incumbrances, of what nature or kind soever."

In *Doonan* v. *Killilea* (222 N. Y. 399, 401) it was said that section 253 of the Real Property Law had reference " not to inchoate assessments or other charges, but to legal liens fully matured. The covenant against incumbrances operates *in præsenti* and is broken the instant it is made if an incumbrance exists, but unless the assessment is then an actual lien, the covenant is not broken."

The case of *Mayers* v. *Van Schaick* (268 N. Y. 320) is controlling here. It is stronger against plaintiff than is the instant case, since the word used there was " requirements." There Judge LOUGHRAN said: " Title insurance operates to protect a purchaser or a mortgagee against defects in or incumbrances on a title existing at the date of such insurance. It is not prospective in its operation and has no relation to liens or requirements arising thereafter. (*Trenton Potteries Co.* v. *Title Guarantee & Trust Co.*, (176 N. Y. 65, 72.) * * * It follows, we think, that Lawyers Title and Guarantee Company no more agreed with plaintiff

to protect him against liability for the unpaid assessment in question than it undertook to indemnify him for taxes to be levied against the premises after delivery of its certificate of title insurance " (pp. 323, 324.)

Plaintiff relies in good part in support of its contention on *DePeyster* v. *Murphy* (66 N. Y. 622). In view of the decisions in *Real Estate Corp.* v. *Harper* (174 N. Y. 123, 130); *Doonan* v. *Killilea* (*supra*), and *Mayers* v. *Van Schaick* (*supra*) it must be considered that *DePeyster* v. *Murphy* (*supra*) has been overruled.

The case of *Getman* v. *Niferopulos* (276 N. Y. 161) is not in conflict with the decision here. There the city of Johnstown was granted the power to impose and levy taxes by its charter. Here the power to levy taxes and assessments was not granted to the town but to the board of supervisors of the county. (Laws of 1926, ch. 549, § 11. See, also, generally, Town Law [Cons. Laws, ch. 62], § 116.)

The judgment should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, FINCH and RIPPEY, JJ., concur; SEARS and LEWIS, JJ., taking no part.

Judgment affirmed.