METROPOLITAN LIFE INSURANCE COMPANY, Appellant, *v.* UNION TRUST COMPANY OF ROCHESTER, Respondent, et al., Defendants.

Fourth Department, November 1, 1944.

*Frank Ewing, Brooks M. Tibbetts* and *Robert F. MacCameron* for plaintiff-appellant.

*Andrew R. Sutherland, Kenneth B. Keating, Charles S. Wilcox* and *Arthur E. Sutherland, Jr.,* for defendant-respondent.

McCurn, J.  The plaintiff Metropolitan Life Insurance Company and defendant Union Trust Company entered into a written agreement entitled: '' Contract with Mortgage Loan Correspondent '' dated January 28, 1929, wherein it was agreed that the said Union Trust Company '' shall act as correspondent for the Company in the City of Rochester, State of New York, for the purpose of submitting loans secured by mortgages or deeds of trust for sale to the Company.'' During a period of about eighteen months following the making of this agreement the plaintiff purchased from the Trust Company as such mortgage loan correspondent one hundred forty-six mortgages covering residential properties located in the towns of Pittsford, Brighton, Greece and Irondequoit in Monroe County.  Later many of these mortgages became in default and the plaintiff in some cases brought foreclosure actions and bid the property in on the foreclosure sale and in some cases it took a deed from the owner in lieu of foreclosure.  It appears that the properties covered by the mortgages were located in newly developed residential sections and that the local improvements had been financed pursuant to the provisions of chapter 549 of the Laws of 1926 as amended by the Laws of 1927 (since repealed: see L. 1933, ch. 580).  Under the procedure authorized by these statutes the towns financed these improvements in the first instance by issuing short term certificates which were later retired by the proceeds of bond issues.  The Town Board would apportion to each property benefited its fair share of

the cost of the improvement, and after hearing any objections which might be raised, the final assessment of the amount determined, was made against the property benefited. If the property owner did not pay the assessment within fifteen days, then it became a part of the aggregate amount for which the town issued bonds. These bonds were payable in annual installments over a period to be determined by the board, not to exceed fifteen years. Each year the Town Board would levy against each property the amount of the installment due for that particular year. The yearly installment when levied became a lien against the property benefited " prior and superior to any lien or claim except the lien of an existing tax or local assessment " (L. 1926, ch. 549, § 11). . The original assessment apportioned to the land benefited did not become a lien nor did any lien attach to the benefited property out of this procedure until the levy was made for the annual installment. (*Metropolitan Life Insurance Co.* v. *Union Trust Co.,* 168 Misc. 657, affd. 257 App. Div. 906, affd. 283 N. Y. 33.)

When the Metropolitan purchased the mortgages in question from the Trust Company, there were no liens of record against any of the properties covered by the mortgages. The Trust Company procured and furnished to the plaintiff in each instance a policy of title insurance. However, by the time the property owners defaulted on their mortgages and the plaintiff took title to the properties either by foreclosure or deed, annual installments levied after the date of the purchase of the mortgages had become liens prior to and superior to the liens of the mortgages. Plaintiff was accordingly compelled to pay the taxes represented by these liens in order to clear its title to the property. The plaintiff claims that it has been damaged in the sum of $280,248.36. Plaintiff brought this action to recover that amount alleging fraud and deceit upon the part of the defendant Trust Company. The complaint was dismissed as to the defendant Abstract Title and Mortgage Corporation on the ground that the assessments in question were not liens at the time the policies were issued. (*Metropolitan Life Insurance Co.* v. *Union Trust Co.,* 168 Misc. 657, affd. 257 App. Div. 906, affd. 283 N. Y. 33, *supra.*) Upon stipulation of the parties the case was referred to Hon. ERNEST I. EDGCOMB, Official Referee, to hear, try and determine. After trial was had, the evidence closed, and after the parties had submitted briefs, the Official Referee handed down a memorandum in writing deciding the issues in favor of the defendant. The memorandum concludes as follows:

" The evidence fails to warrant a finding of any willful withholding by the bank of knowledge pertinent to the sale of these mortgages, or to their value or desirability, which it was in duty bound to disclose, or of any misstatement of a past or existing fact. Without such a misrepresentation, or something equivalent thereto, there can be no fraud, and nothing for the other party to rely upon. The misrepresentation being missing here, plaintiff cannot recover, and it becomes unnecessary to inquire whether the other elements required to sustain an action for fraud and deceit have been established.

" If I am correct in the conclusions already reached, it follows that the complaint should be dismissed with costs. Judgment is so ordered. Prepare findings in accordance with this memorandum and send me for my signature.

ERNEST I. EDGCOMB,<br>Supreme Court Official Referee.

Dated Syracuse, New York,
April 30th, 1943."

Judge EDGCOMB died on June 7, 1943. His death was sudden and unexpected and neither party had submitted formal requests to find. Following his death the plaintiff moved for a retrial of the issues upon the theory that there had been no decision. That motion was denied and plaintiff appeals from the order entered thereon. The defendant entered judgment and then an amended judgment in its favor, from both of which plaintiff appeals. Plaintiff also moved to vacate the original judgment and appeals from an order denying such motion.

Our first question is whether or not the memorandum is a decision or report upon which judgment could be lawfully entered.

Section 470 of the Civil Practice Act provides that the referee's report " shall comply with the requirements as to a decision by the court in a like case."

Section 440 of the Civil Practice Act provides: " *Form of Decision* * * * The decision of the court may be oral or in writing and, except where a non-suit is granted, must state the facts which it deems essential."

Prior to the amendment of 1936, section 440 of the Civil Practice Act provided that " The decision of the court * * * must state separately the facts found and conclusions of law * * *." This was former section 1022 of the Code of Civil Procedure in effect since 1903. Under section 440 of the Civil Practice Act as it read before the amendment of 1936, and under section 1022 of the Code of Civil Procedure as it read

since 1903 it was required that the decision contain separately stated and numbered findings of fact and conclusions of law. (*People ex rel. Central N. E. R. Co.* v. *State Tax Comm.*, 261 App. Div. 416; *Barber* v. *Singer*, 235 App. Div. 763.)

Section 1022 of the Code of Civil Procedure as it read from 1894 (L. 1894, ch. 688) until its amendment in 1903 provided the decision of the court may separately state the facts found and the conclusions of law " or the court  *  *  *  may file a decision stating concisely the grounds upon which such issues have been decided and direct the judgment to be entered thereon." This court in passing upon the validity of a decision made pursuant to the 1894 amendment stated in the opinion by FOLLETT, J.: " The facts found, and the conclusions of law, need not be separately stated, but the issues of fact and law, as above defined, must be decided, and the decision must disclose how they are decided, otherwise it is impossible to state concisely the grounds on which the issues were decided." (*Shaffer* v. *Martin*, 20 App. Div. 304, 306.)

The 1936 amendment (L. 1936, ch. 915) to section 440 of the Civil Practice Act eliminated the requirement that the court " must state separately the facts found and conclusions of law." (See *Matter of Joroco Silk Corporation* v. *Nova*, 265 App. Div. 1061; *Hamer* v. *Flatto*, 170 Misc. 560; *Grace* v. *Corn Exchange Bank Trust Co.*, 171 Misc. 522.)

The present requirement is that the court " must state the facts which it deems essential." That obviously means the facts upon which the rights or liability of the parties depend and does not include evidentiary facts which are merely relevant to the facts which determine the rights or liability of the parties. (See *Shaffer* v. *Martin*, 20 App. Div. 304.)

The memorandum of the Official Referee after a general statement of the situation which gave rise to the litigation calls attention to the elements necessary to a cause of action for fraud. It proceeds to discuss in detail the facts and the law applicable thereto. The memorandum in our opinion leaves no room for doubt as to how the Referee decided each issue of fact and each question of law. Our attention is not called to any essential fact or question of law which was left undecided. It concluded with a statement that the complaint should be dismissed and " Judgment is so ordered."

The memorandum contained this final sentence, " Prepare findings in accordance with this memorandum and send me for my signature." This statement indicated the willingness of the Referee to sign findings " in accordance with this memorandum "

but not otherwise. This is emphasized by the fact that in reply to a letter from plaintiff's attorney the Referee wrote the attorneys for both sides suggesting that they try to agree on the findings and if unable to, to come before him and he would settle them. The fact that he died before formal findings were prepared by the attorneys does not detract from what he had already done. He had submitted a memorandum in writing signed by him " stating the facts which he deemed essential," directing that the complaint be dismissed with costs and ordering judgment to be entered accordingly. The memorandum we think satisfies every requirement of sections 470 and 440 of the Civil Practice Act and was a sufficient basis for entry of judgment pursuant to rule 198 of the Rules of Civil Practice.

The appellant complains that it was deprived of the right to submit requests to find as provided for in section 471 of the Civil Practice Act. One affidavit filed by plaintiff on the motion for a retrial states that at the close of the evidence an informal discussion off the record took place in which plaintiff's attorney asked the Referee if he wished to have " requests and findings " submitted with the briefs and that the Referee " indicated that the matter of submitting findings and requests should be left until a later date." Apparently the matter of submitting requests was by consent of the parties and with the approval of the Referee postponed until after the Referee's report rather than before as provided by section 471 of the Civil Practice Act. Obviously at that time the referee could make no finding except in accordance with his memorandum. He could make no conclusions of law contrary to those specified in his memorandum and at the same time order judgment dismissing the complaint. Appellant does not call our attention to any essential fact which was not stated in the memorandum. The Referee had before him the briefs submitted by the parties. The Referee's decision upon all of the facts which plaintiff in its brief on this appeal claims to have been established in its favor is to be found in the memorandum. This court is authorized to, and has considered all of the questions both of law and fact which plaintiff in its brief has asked us to review. It follows that plaintiff has not been prejudiced because of the fact that the Referee's death cut off the privilege to plaintiff to submit proposed findings.

A careful reading of the memorandum of the Official Referee, covering thirty pages of the printed record, leaves no doubt that he stated the facts which he deemed to be the essential facts in the case.

The dealings between the plaintiff and defendant were based upon the written agreement by which defendant became plaintiff's *correspondent* for the purpose of submitting loans to the plaintiff for sale to it. It became plaintiff's *agent* for the purpose of collecting the principal and interest upon such loans. Acting under the agreement defendant submitted the loans to the plaintiff, each proferred loan being made upon application in the name of the property owner. There was also submitted with each application a paper known as a '' mortgage loan submission '' which included a description of the land and buildings, and an appraisal. There was also submitted with each application a policy insuring the title to the premises. Upon approval of the plaintiff of the loan, defendant then procured a mortgage from the borrower to itself, which mortgage it later assigned to the plaintiff. Plaintiff then paid the defendant the amount of the mortgage, and the defendant after first deducting the expenses incurred in connection with the loan, applied the proceeds first to the payment of any mortgages or incumbrances already on the property, and then turned the balance over to the borrower.

It appears that in about one hundred ten of the properties involved the defendant Trust Company was already the holder of mortgages to secure loans made by it to finance the construction of the buildings. The result was that as to the properties upon which the Trust Company held building loan mortgages, it satisfied the building loan mortgages by paying itself. The plaintiff claims that these and other circumstances evidence a conflict between the defendant Trust Company's own interest, and its duty as loan representative of the plaintiff. The plaintiff's claim is, first, that the defendant Trust Company made false and fraudulent representations as to the improvement tax situation and second, that it was its duty to disclose to the plaintiff the facts relative to the improvement tax situation — that it not only failed to do so but willfully concealed the same.

It is claimed that the defendant Trust Company falsely represented the value of the properties when it forwarded the application for the loan. There is nothing contained in the submission sheet or appraisal which specifies the basis upon which the appraisals were made. Since there is no mention of assessments or taxes or tax rates there is no affirmative misrepresentation in respect to the existence or nonexistence of any such item.

Plaintiff's argument that the appraisals were false is based upon the claim that the future assessments were a depressing influence upon the market, and were not taken into account in

the appraisal. It is claimed that the defendant had private appraisals by one of its officers which showed lower values than those on the submission sheet. Appraisals are matters of opinion. We find no proof in the record of a deliberate falsification of the appraisals. The plaintiff has introduced the appraisals into evidence in gross, and has not attempted to demonstrate the inaccuracy of any specific appraisal. The evidence does not establish that there is a material variance between the appraisals as made, and the market value at the time the appraisals were made, nor does it establish that the appraisals did not reflect the unpaid assessments. The appraisals were made by an appraiser selected by the defendant Trust Company. It does not appear that the Trust Company willfully selected an incompetent appraiser or that the appraisal did not represent the appraiser's actual opinion of value.

If the defendant is liable its liability must, therefore, lie in nondisclosure of material facts. The Referee concluded that in its transactions plaintiff and defendant dealt as " buyer and seller * * * at arm's length." The plaintiff on this appeal contends that their relationship was of a fiduciary nature and notwithstanding the fact that plaintiff reserved unto itself the exclusive right to determine what mortgages it would purchase that nevertheless it relied upon the defendant as its loan correspondent to protect it from unwise mortgage investments. Whatever obligation the relationship may have placed upon the defendant Trust Company it seems clear that its duty, if any, to furnish information not asked for, would extend only to such information as it had reason to believe was unknown to the Insurance Company, and which it thought to be material, or which it had reason to believe that the Insurance Company would think to be material.

The logical inference to be drawn from the course of dealing between the parties is that neither considered at the time, that the amount of the annual tax burden to the owner was a material matter to be taken into consideration in deciding whether or not to purchase the mortgage. These transactions took place in 1929 and 1930. It appears to have been at a later date, after the depression arrived, and the plaintiff was obliged to take over the properties, that the improvement tax situation became thought of as a material element. There is no indication from anything which took place at the time the mortgages were purchased, that the plaintiff sought or expected to receive information as to the amount of yearly tax of any nature, past, present, or future, which the properties had been, or would be subjected

to. Both parties, of course, knew that the yearly tax of whatever amount it might be, would, when levied, become a lien prior to, and superior to the mortgage. The Insurance Company as well as the Trust Company knew that the properties in question were new properties in newly developed localities and that local improvements had recently been completed. It does not appear that the Insurance Company expressed any interest as to how such improvements had been, or would be, paid for. Any curiosity or desire for information sufficient to cause an inquiry to be made from the Trust Company, or from the public authorities would necessarily have disclosed the situation which existed. The statute authorizing the method resorted to, for financing local improvements was State-wide in its application. The Insurance Company was not a novice in the handling of mortgage loans, and was fully as capable of judging what information was material for it to have, as was the Trust Company. It prepared the forms known as submission sheets upon which it required information with respect to each property to be set forth. There was no requirement for any information as to taxes or assessments other than taxes which had already become liens.

It is not possible now to charge the defendant for failing to disclose what did not appear to be material at the time, and as to which there is no substantial evidence that the plaintiff considered it material. It is true that three of plaintiff's home office representatives testified that had they known about the improvement tax situation the applications would all have been rejected. Obviously that was their conclusion as of the time of the trial. It does not appear that the Insurance Company had any such rule or that its representative had been so instructed, or had followed such a practice at the time of the transactions in question. They sought no information on the subject. The submission sheet upon which the Insurance Company required information to be set forth regarding the property in question listed no inquiry as to future assessment for public improvements. In 1935 it began using a new form requiring such information.

The evidence in our opinion establishes that the defendant had no reason to believe that the Insurance Company considered information concerning taxes to be levied in the future as information material to the purchase of the mortgages; also that the Trust Company itself did not believe it to be material.

We agree with the Referee that there was no misrepresentation by the defendant Trust Company. We agree also that the

failure of the Trust Company to advise the Insurance Company of the improvement tax situation did not constitute a fraudulent concealment of the facts, nor did it constitute a willful violation of any duty owed by the Trust Company to the Insurance Company. The judgments and orders should be affirmed, with costs.

All concur. Present — CUNNINGHAM, P. J., TAYLOR, DOWLING, HARRIS and McCURN, JJ.

Judgments and orders affirmed, with costs.