CHARLES F. RYAN & SON, INC., et al., Respondents, v. LANCASTER HOMES, INC., et al., Appellants.

Fourth Department, December 10, 1964.

*Angelo G. Faraci* and *Anthony F. Bonadio* (*Thomas Laverne* of counsel), for appellants.

*Robinson, Williams, Brown, Robinson & Angeloff* (*Mitchell T. Williams* and *Richard Engel* of counsel), for respondents.

*Per Curiam.* The judgments under review broadly enjoin the defendants from in any manner using the name "Ryan" in conjunction with their home construction business within the confines of the County of Monroe, State of New York. Such relief is not warranted by the facts of this case.

Defendant Ryan Homes, Inc., a Pennsylvania corporation doing business in five States and the District of Columbia, is a large-volume builder of pre-cut, standardized homes. The corporation was organized in 1947 under the name Edward M. Ryan, Inc., but it has sold homes under the style "Ryan Homes" since incorporation. In 1960 the corporate name was changed to Ryan Homes, Inc., in an effort to depersonalize the name and to emphasize the highly successful mass-production aspect of the business. This name has been publicized by the defendant by extensive advertising in nationally circulated magazines and in the localities of its various operations. The magnitude of the operations of the defendant Ryan Homes, Inc. is demonstrated by the volume of sales in 1963 from which it grossed approximately $32,000,000 for 1,531 homes.

The defendant Ryan Homes, Inc. decided to expand its operations into New York State and early in June of 1962 its vice-president, James Ryan, visited Rochester and initiated a proposed large-scale home-building program in that area. The defendant Lancaster Homes, Inc., a wholly owned subsidiary of Ryan Homes, Inc., was formed to conduct the Monroe County enterprise. Building sites were acquired and extensive operations were planned. Objection was soon voiced by the plaintiffs.

Plaintiffs, Charles F. Ryan & Son, Inc. and John H. Ryan, now operate a family business which has been engaged in home building in Monroe County for 40 years. Since its inception the business has been conducted under the names Ryan and Ryan, Inc., Ryson Development Corporation, and Charles F.

Ryan & Son, Inc. The characteristic signature of the plaintiffs as used in their advertising had been " Homes by Ryan " but, in mid-1962 when defendants were entering Monroe County, plaintiffs also began employing the slogan " Ryan Homes ". An assumed-name certificate was filed on July 13, 1962 by plaintiff John H. Ryan. We quote from this certificate: " I *intend to* Conduct and transact business * * * under the name and style of RYAN HOMES." The highly significant portion of this certificate is the statement of intention to conduct business under the name and style of " Ryan Homes " and the deletion of the word " now ". Otherwise expressed, this certificate indicates that plaintiff John H. Ryan had not previously conducted business under that name but intended to do so thereafter.

The plaintiffs have developed a reputation in the Rochester area in the field of custom-built homes. They have averaged somewhat less than 10 homes a year in the $22,000 to $50,000 price range since about 1952. One was sold for $100,000. It appears that plaintiffs, as custom-home builders, have an excellent reputation in the Rochester area.

In contrast, defendants offer to a mass market certain basic styles patterned after models bearing descriptive names. In most instances the homes sell in the $20,000 price range and are not offered as custom-built.

This court has previously denied these plaintiffs summary relief under section 964 of the Penal Law. (*Matter of Ryan & Son* v. *Lancaster Homes,* 19 A D 2d 14.) That section is intended against obvious " palming off " of one's product as that of another or the intentional misleading of the public by a defendant identifying his business with that of another.

The proof adduced on the trial of this present plenary equitable action demonstrates that the defendants do not seek to exploit the good will and business reputation of the plaintiffs but, rather, their own well-known and nationally established name. Thus, we are not met with an instance of wrongful trading upon another's name and reputation. The Trial Justice based his decision solely upon a finding of unfair competition. He refused to find that the defendants had embarked upon a program of unfair trade practices. Moreover, he refused to make the customary finding in cases of this type, necessary to an injunction, that if the prayer for relief is not granted plaintiff would continue to be damaged by confusion and diversion and would suffer great and irreparable loss in name and reputation.

We find no evidence of unfair competition. Defendants entered an area where it happened that plaintiffs were doing

business. There is no showing of any effort on the part of the defendants to divert business from the plaintiffs. In fact, the very nature of their operations, their advertising, and their conduct clearly distinguish the two types of businesses and the builders themselves. In the plaintiffs' operations emphasis is placed upon the high caliber of the work undertaken personally by John Ryan; the prospective purchaser is invited to rely upon his experience and skill as a custom builder. The plaintiffs' firm name invokes the reputation which he and his father developed, and their advertising is personalized by the use of a shamrock as a distinctive symbol and John Ryan's photograph to emphasize to the public that this is his operation and none other. In contrast, the defendants rely upon the reputation of a large organization without any effort to simulate the advertising of the plaintiffs. Almost invariably their advertising features their own distinctive crest bearing the name of the founder, E. M. Ryan, and includes a listing of the several cities where Ryan Homes are offered. Further, emphasis is upon the fact that the defendant Ryan Homes, Inc. has been the recipient of national awards. This latter assertion could not possibly be understood to apply to the plaintiffs.

What the plaintiffs are facing is normal competition, which they have no right to enjoin. This is an economic rather than a legal problem. It may well be that the plaintiffs will sell fewer houses in the future because of the extensive operations of the defendants but, as we have said, that is the result of normal competition in business and not as a result of the manner in which the defendants are operating. There is no claim or evidence of fraud and we find none; nor did the Trial Justice. There is no evidence of intentional deception or " palming off ". We so found in the case that was presented to us under section 964 of the Penal Law, and this record does not supply such proof.

Interference with a person's right to use his own name in business is generally disapproved. Rarely is this use enjoined, particularly in the absence of fraud and intentional deceit or a clear showing of confusion deliberately created in the minds of the general purchasing public. We can do no better than to consider this case in the light of the long-established rule as set forth in *Meneely* v. *Meneely* (62 N. Y. 427, 431–432): " [E]very man has the absolute right to use his own name in his own business, even though he may thereby interfere with or injure the business of another person bearing the same name, provided he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do any thing calculated to mislead. Where the only con-

fusion created is that which results from the similarity of the names the courts will not interfere. A person cannot make a trade mark of his own name, and thus obtain a monopoly of it which will debar all other persons of the same name from using their own names in their own business.'' This rule has been qualified, as we have said, only to the extent that use of a family name will be restricted where such use tends or threatens to induce confusion in the public mind (*Sullivan* v. *Sullivan Radio & T. V.,* 1 A D 2d 609, 611 and cases cited). In the *Sullivan* case, the court referred to the *Meneely* case with approval and recognized the continuing validity and authority of that decision. The decree in the *Sullivan* case did not enjoin the use of the defendant's full name or his initials with his surname. The very narrow limitation imposed was against the use of the distinctive combination '' Ed Sullivan ''.

The defendants' use of the name Ryan was not inspired by any intent to deceive or confuse the public. The corporation derives its name from its founder. The president is Edward M. Ryan and his brother, James, is the vice-president. Another brother, William Ryan, is the area manager for Lancaster Homes, Inc. in Syracuse, New York. Their parents originally entered the home construction field in 1937. Thus the issue in this litigation is whether these individuals, who are active participants in the defendant corporations, may be precluded from conducting their business under the family name which they have used since their business was established.

The likelihood of confusion in the minds of the buying public must necessarily be assessed in the context of the particular market involved. Under exceptional circumstances the mere similarity of names might in itself justify equitable relief. However, when persons are considering a purchase as substantial as a $22,000 to $50,000 home, it is almost incomprehensible that they would not thoroughly investigate the identity of the proposed builder at the very outset. The market to which plaintiffs direct their promotion is not likely to be confused, misled, or diverted by defendants' use of the name '' Ryan Homes ''.

We find no evidence of real confusion. The proof offered was limited to instances of receipt by the plaintiffs of mail and telephone calls intended for the defendants. There was no proof that mail and telephone calls intended for the plaintiffs had been directed to the defendants. Moreover, plaintiffs were unable to show any specific sales lost to them because of the use of the name Ryan by defendants. They showed no loss of profits.

The record does not show that the plaintiffs have established a secondary meaning for the signature '' Homes by Ryan '' (and

the trial court so found), but if, in fact, any meaning was established it would necessarily indicate high-priced, custom-built homes as distinguished from moderately priced, pre-cut, standardized homes.

It is urged that use of the name Ryan in connection with mass-produced homes would detract from the plaintiffs' established reputation for furnishing custom-built homes. There is no support in the record for this contention which, in any event, might be a relevant consideration only if no legitimate connection existed between defendant and the name Ryan (see *Tiffany & Co.* v. *Tiffany Prods.*, 147 Misc. 679, affd. 237 App. Div. 801, affd. 262 N. Y. 482). However, in this case the defendant has an equally legitimate claim of right to the use of its own name and to the enjoyment of the reputation which it has given to that name. The defendants do not offer to the public a cheaper version of the plaintiffs' product but, rather, a commodity which they have promoted in their own right and for which they have received national awards.

In the opinion of this court when the proceeding under the Penal Law was on appeal, it was indicated that the risk of confusion might be avoided by measures short of an absolute prohibition of the defendants' use of the name Ryan. The Trial Justice, however, granted the broadest possible injunctive relief. Even if some relief were called for in this case, we would feel constrained to limit it to the minimum amount which would still afford plaintiffs protection. However, as we have indicated, no relief is justified in the case before us.

It is indicated in the record that the defendants intend to enter a somewhat higher priced field in the Pittsford area of Monroe County, but they had not entered into that field at the time of trial. Whether they will do so in the future is problematical. Their operations would still, it is contended, be in the pre-cut model type business, and their advertising would be similar in format to that introduced at the trial of this action. But if it can be demonstrated at a later date that there is unfair competition and that defendants are endeavoring to " palm off " or deceive or confuse, relief could then be granted.

We feel constrained to comment upon the requests for findings of fact which were submitted by the plaintiffs to the Trial Justice pursuant to CPLR 4213 (subd. [a]). In rendering his decision, the Trial Justice followed the common practice of indicating which of the proposed findings he had adopted, and which he had refused. However, many of the proposed findings, while not being wholly without some basis in the record, are evidentiary, immaterial, argumentative, repetitious and, in some

instances, misleading. Others are not supported by evidence. The CPLR directs that " [t]he decision of the court * * * shall state the facts it deems essential." (CPLR 4213, subd. [b].) As this court has stated previously: " That obviously means the facts upon which the rights or liability of the parties depend and does not include evidentiary facts which are merely relevant to the facts which determine the rights or liability of the parties." (*Metropolitan Life Ins. Co.* v. *Union Trust Co.*, 268 App. Div. 474, 479, affd. 294 N. Y. 254.) We disapprove of the practice of submitting proposed findings which contain evidentiary matter or factual matter not essential to the decision of the court. The CPLR provides that each requested finding shall be " so phrased that the court may conveniently pass upon it." (CPLR 4213, subd. [a].) Requests to find facts which are immaterial or which are so drafted as to be argumentative or misleading fail to satisfy this requirement. Our determination of the invalidity of certain findings is based upon these general rules.

The judgments appealed from should be reversed and the complaint dismissed.

WILLIAMS, P. J., BASTOW, GOLDMAN, NOONAN and DEL VECCHIO, JJ., concur.

Judgments unanimously reversed on the law and facts, without costs of this appeal to either party, and complaint dismissed, without costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.