George M. Carney, J.
In this equity action, the plaintiff seeks to permanently enjoin the defendant from preparing, selling or offering for sale any imitation of plaintiff’s article or any article hearing the name “ White Christmas ” or bearing a false trade-mark or any imitation of the label or trade-mark of the plaintiff. An accounting with money damages in the sum of $25,000 is also sought. The defendant in his answer denies in substance the claim of plaintiff and seeks for himself similar injunctive relief, with an accounting and money damages against the plaintiff in the sum of $25,000. The evidence consists of the testimony of various witnesses produced by plaintiff and numerous exhibits. The defendant rested at the close of plaintiff’s case without calling any witnesses and upon motion made to withdraw the counterclaim the same was granted upon consent.
The evidence convinces me that the name “ White Christmas ” as applied to perfumes and toilet water had been used by Murray Morin and Saravel Inc. between the years 1944 and 1955. The evidence further convinces me that the plaintiff by assignments from Saravel Inc. in 1955 and 1957 acquired the right to the trade-mark 1 i White Christmas ’ ’ and all right, title and interest in the use of the name and label together with the good will of the business associated with the trade-mark, formerly owned by Saravel Inc. The plaintiff paid a substantial sum of money to Saravel Inc., as indicated by plaintiff’s Exhibits 23 and 24. On August 30, 1955 plaintiff paid Saravel Inc. $25,000 for 500 gross of one-ounce bottles of White Christmas perfume and an automatic wrapping machine valued at $500.
On February 7, 1956 plaintiff paid $6,000 for various miscellaneous items including 102,000 White Christmas toilet water *777 boxes, 80,000 White Christmas perfume boxes, and labels, and 250 gross of White Christmas toilet water bottles. It would seem from the above that Saravel Inc. had been actively engaged in selling White Christmas perfume and toilet water, and that the plaintiff thought it a valuable enough item to expend a substantial sum of money to acquire the White Christmas merchandise owned by Saravel Inc. together with the trade-mark label and all right, title and interest and good will of Saravel Inc.
The label and trade-mark now used by plaintiff is identical, except possibly for changes in coloring, to that used by plaintiff’s assignors as far back as 1944. The defendant in his answer has admitted selling perfume labeled “White Christmas ”. There is in evidence as plaintiff’s Exhibit 19 the label and wrapping paper used by plaintiff in marketing its product. As plaintiff’s Exhibit 20 in evidence, there are a label and piece of wrapping paper used by defendant in selling his product. There are also in evidence (plaintiff’s Exhibit 40) the wrapped package of perfume sold by plaintiff with the labels affixed and a similar package (plaintiff’s Exhibit 41) identified by plaintiff’s witness as that sold by defendant. The paper used to wrap defendant’s package is almost identical with that used by plaintiff. A close examination of these four exhibits makes it crystal clear that the defendant has deliberately copied the trademark and label of the plaintiff and has even adopted the very same form of wrapping paper used by plaintiff. The trade-mark “White Christmas” is in defendant’s label similar in shape and design to plaintiff’s, the only variation being that the background coloring in defendant’s is black whereas in plaintiff’s it is grey. The black background of plaintiff’s label with white dots, with an irregular white line running through the black is copied exactly by defendant, even the position of each white dot being the same size and placed exactly as in plaintiff’s label. The straight white line near the bottom of plaintiff’s label is exactly copied in defendant’s label. The white space about one-quarter inch wide running across plaintiff’s label, with a thin black strip below it, is duplicated in defendant’s label. In this white space where plaintiff has the printed words “by saravel ” defendant has printed “by caravel ”. Even the red, white and blue sticker found on plaintiff’s package is used by defendant, the pi’inting on plaintiff’s being in English and on defendant’s in French with some variation in meaning.
There is absolutely no doubt in my mind that this defendant has appropriated plaintiff’s trade-mark and label and has made a deliberate attempt to market his product in such a manner as to confuse the public, to induce innocent purchasers seeking *778 plaintiff’s products to purchase his, to the damage of the plaintiff. The plaintiff is entitled to a permanent injunction restraining the defendant from continuing these practices.
On the question of an accounting and damages, the plaintiff has submitted no specific proof of damage. It may be noted that there is no proof in the record as to the extent of plaintiff’s sales of White Christmas, nor as to the extent of defendant’s sales. Lacking also is any proof that the plaintiff would have made any of the sales which the defendant may have made. An award for damages or a direction for an accounting does not necessarily flow from the establishment of a right to injunctive relief, absent sufficient evidence therefor.
Under the circumstances the plaintiff is entitled to judgment against the defendant to the extent of restraining said defendant as prayed for in the complaint.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment.