GEMVETO JEWELRY COMPANY, INC., Plaintiff,

v.

JEFF COOPER INCORPORATED and Jeff Cooper, Individually, Defendants.

No. 81 Civ. 3447.

United States District Court, S.D. New York.

July 15, 1983.

322

Auslander, Thomas & Morrison, Jarblum & Solomon, P.C., New York City, for plaintiff; M. Arthur Auslander, James D. Fornari, New York City, of counsel.

Colvin, Miskin, Basseches & Mandelbaum, New York City, for defendants; Howard C. Miskin, Howard F. Mandelbaum, New York City, of counsel.

## OPINION FINDINGS OF FACT AND CONCLUSIONS OF LAW

EDWARD WEINFELD, District Judge.

This is an action by plaintiff, Gemveto Jewelry Company, Inc. ("Gemveto"), a manufacturing jeweler, against Jeff Cooper Incorporated ("Cooper Jewelry"), another jewelry manufacturer, and its principal,

Jeff Cooper, for infringement of two patents, violation of section 43 of the Lanham Act,[1] copyright infringement of Gemveto's works of jewelry and unfair competition under New York statutory and common law.

The defendants deny validity of the patents, infringement and unfair competition. They counterclaim for a declaratory judgment of invalidity and noninfringement of the patents and copyrights and seek damages for plaintiff's alleged efforts to coerce defendants' customers to cease doing business with them by asserting patent and copyright claims known to be invalid and attorneys' fees under 35 U.S.C., section 285.

Gemveto sells its manufactured pieces of jewelry to retailers who sell the jewelry to the ultimate consumer. It is not disputed that its manufactured products are of extra high quality, and include 18 karat gold rings, bracelets, necklaces and earrings which comprise gemstones mounted in and forming part of artistic settings of precious stones. Gemveto's customers include the nation's outstanding jewelry retailers, such as Tiffany, Cartier, Van Cleef & Arpels, Neiman Marcus, and other well known retailers throughout the nation. Plaintiff has a preeminent reputation as a manufacturer of quality jewelry in terms of craftsmanship, style and design. Jean Vitau, principal of Gemveto and the inventor of the two patents at issue, has been described by his principal customers as a genius in designing, styling and producing fine quality jewelry. Defendant, Cooper Jewelry, makes and sells more moderately priced jewelry of 14 carat gold and gemstones of good but slightly imperfect quality. Jeff Cooper's initial activity in the jewelry business was as a salesman in the employ of others. While so employed, he began marketing for himself inexpensive items of jewelry such as gold horses that he purchased from casters. In 1977 he engaged in business on his own and in January 1978 incorporated Cooper Jewelry, which thereafter manufac-

tured a "fashionable diamond line" aimed at the middle class market in contrast to Gemveto's market. The difference in their products were described by Cooper, who referred to Gemveto as the "Rolls Royce" and his company as the "Chevy" in the industry.[2]

## I. PATENT INFRINGEMENT

Gemveto, by assignment from Vitau, is the owner of the two patents in suit. Vitau filed a patent application in the United States Patent and Trademark Office ("PTO") in January, 1979, for which a patent issued on September 16, 1980 (the "245 patent").[3] In September, 1979, while the first was still pending, he filed a second application, for which a patent issued on October 6, 1981 (the "818 patent").[4] Plaintiff contends that the defendants are manufacturing and selling jewelry that infringe on these patents. Defendants deny any infringement. In addition, they charge that both patents are invalid as obvious modifications of existing teachings, and because plaintiff committed fraud on the PTO by failing to disclose relevant prior art to the examiner.

### A. THE PATENTS

#### 1. The 245

The 245 patent basically consists of three parts: a cavity or "bezel," a retaining wall of gold, and a wire bar. The bezels are indentations in the mount into which the stones are placed up to their girdle, or widest part. The size of the plate between each bezel is determined by the amount of overlap of the peripheral portions of the stones to be mounted. Grooves, generally rectangular in shape, are then cut parallel to the bezels. The gold wall, or "supporting member," is then soldered into these grooves. Declivities are then cut into the outwardly extending portions of the wall. These are configured to receive and support

---

1. 15 U.S.C. § 1125(a).

2. Record at 1466.

3. United States Patent No. 4,222,245.

4. United States Patent No. 4,292,818.

the peripheral portions of the stones so that the stones rest on the bezels. Rods of wire are then placed and soldered on the top of the wall which are designed to overlie the declivities. The rods can be cylindrical, flat, oval or rectangular in cross-section. Both the rod and the wall are composed of precious metals. The downward pressure of the rod and the lateral anchoring of the wall secure the stones in the bezels.

### 2. The 818

The 818 patent also contains three components: bezels, supporting pegs and wire rods. The function of the bezels is the same as with the 245 patent—to serve as receptacles for the stones. Unlike the 245 patent, however, the connecting portion of the mount between each bezel can either be solid or hollowed. The shape of the hollowed portion can be varied, but diamond-shaped is preferred. The 818 patent employs metal pegs, called "elongated support members," in place of the metal wall used in the 245. The metal pegs are preferably cylindrical, but can have any cross-section. They are either soldered directly to the mount, or to the inner surface of the hollow. Manually deformable securing rods are thereafter affixed substantially parallel to the top surface of the setting. Either end of the rod is bent over the outer edge of the setting at a ninety-degree angle and affixed thereto. The rod is also soldered to the pegs. The space between the rod, the pegs and the mount serve the same function as the declivities in the 245—they are slots to secure the peripheral portions of the stones. The 818 permitted greater flexibility in design than did the 245, and enabled Vitau to use a thinner and lighter wire rod that exposed the brilliance of the stones and gave the jewelry a clean and light appearance.

While the 818 contains improvements over the 245, there are substantial similarities between the two patents. Thus the examiner, who passed upon both applications, initially rejected the 818 patent on double patenting of the "obviousness-type." Accordingly, Vitau filed a terminal disclaimer in which he acknowledged the obviousness rejection, and dedicated to the public that portion of the lifetime of the 818 patent that would run beyond the statutory period of the 245. Thereafter, the 818 issued.[5]

## B. VALIDITY

### 1. The 245

■ Under section 103, a patent may not issue if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which such subject matter pertains."[6] Although "obviousness" is a question of law,[7] it must be resolved by reference to factual inquiries, including (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, and (3) the level of ordinary skill in the pertinent art.[8]

■ Defendants contend that prior teachings, the wall or channel constructions, render the 245 patent obvious. In support, they offer the testimony of Joseph Lebovic, a diamond setter, who stated that the 245 patent was "sort of" similar to the wall construction.[9] Without more, this fails to overcome the statutory presumption of va-

---

5. Even after the filing of the terminal disclaimer, the application was rejected because the disclaimer did not comply with 37 C.F.R. § 1–321. That provision requires the disclaimer to be signed by the person making it. The disclaimer was resubmitted over Vitau's signature, and the patent issued.

6. 35 U.S.C. § 103.

7. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966).

8. *Id. See generally Warner-Jenkinson Co. v. Allied Chemical Corp.,* 477 F.Supp. 371, 387 (S.D.N.Y.1979), *aff'd without opinion,* 633 F.2d 208 (1980).

9. Record at 873.

lidity that attaches to an issued patent.[10] Moreover, a considerable amount of testimony from experienced jewelers was adduced that both Vitau patents were original and important advances in the industry.[11] For example, Harold Tivol, president for thirty-one years of Tivol Plaza, a high quality store in Kansas City, with extensive training in the jewelry trade described Vitau as a "genius"[12] who "developed a line that [we had] never seen before."[13] In specific Tivol stated that the setting methods patented by Vitau "had never been done before."[14] Similarly, Robert Haltom, Chairman of the Board of Haltom Jewelers in Fort Worth and a jeweler for thirty years, testified that he had never seen a setting style like Gemveto's "anywhere."[15] Finally, another experienced jeweler, Dominick Pompillonia, testified that he, too, had never seen anything similar to Gemveto's settings prior to their introduction by Vitau.[16] These statements, as well as Vitau's description of the lengthy and arduous process he undertook to invent the patented settings, are accepted by the Court as substantial evidence that even persons of extraordinary skill in the industry considered the differences between Vitau's patent and prior art to be significant. In addition, there is undisputed evidence of the great commercial success of the patent. This, too, is evidence of non-obviousness.[17] Thus, the Court concludes that the 245 patent is not

obvious by reason of the wall or channel constructions and that the patent was lawfully issued to Vitau.[18]

## 2. The 818

The defendants contend that the 818 is invalid by reason of plaintiff's acts with respect to the 245. The essence of their argument centers about the claim that Gemveto published, advertised and placed on sale rings made in accordance with the teachings of the 245 patent in July and August, 1978—more than one year prior to September 17, 1979, the filing date of the 818 application. The rings were advertised in a widely circulated trade journal, shipped to several customers and offered for sale at two trade shows during that time.[19] Defendants' argument continues that the aforesaid prior public sale and offering rendered the claims of the 818 obvious in view of prior art and therefore invalid under section 103. In support of their position, the defendants stress that the 818 application was rejected by the same examiner who then had under consideration the pending but not yet matured 245. The examiner found that the 818 invention constituted "double patenting [of the] obviousness type" as against the claims of the 245.

Double patenting has been described by a distinguished patent jurist as a

**10.** 35 U.S.C. § 282.

**11.** None of the witnesses, however, compared one Vitau patent against another and evaluated the independent significance of each. Rather, the totality of evidence went to the obviousness of the two Vitau patents in light of older teachings.

**12.** Record at 759.

**13.** Record at 759.

**14.** Record at 760.

**15.** Record at 814, 815.

**16.** Record at 1044.

**17.** *See Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966); *Shackelton v. J. Kaufman Iron Works, Inc.,* 689

F.2d 334, 340 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1300, 75 L.Ed.2d 931 (1983).

**18.** Defendants' claim of fraud on the PTO is similarly rejected. Defendants failed to identify any material and relevant prior art that was not disclosed in the 245 application. That a patent assigned to Vitau by his uncle was invalidated on grounds of fraud is completely irrelevant to the issues here. Indeed, the Court there specifically exonerated Vitau of wrongdoing. *See Gemveto Jewelry Corp. v. Lambert Jewelry,* 542 F.Supp. 933 (S.D.N.Y.1982).

**19.** Plaintiff conceded this point in a post-trial conference. *See also* Record at 231–38, 242, 252–54. *Cf. Timely Prods. Corp. v. Arron,* 523 F.2d 288, 302 (2d Cir.1975); *Robbins Co. v. Lawrence Mfg. Co.,* 482 F.2d 426, 431 (9th Cir.1973).

"confusing,"[20] judicially created doctrine generally applicable where the same inventor files a second patent application on claims that are an improvement but "patentably indistinct" from those set forth in a pending application.[21] Where the second application discloses the same invention as the first, or a "mere colorable variation" thereof,[22] it will be rejected: an inventor is only entitled to " 'a patent' for *an* invention."[23] Where the second invention is not identical to the first, but merely an obvious improvement, initially it will also be rejected. Such a rejection protects the public interest in preventing an extension of the patent monopoly. However, an inventor may overcome a rejection for double patenting of the obviousness type and obtain a monopoly on his improvement by filing a disclaimer under 35 U.S.C., section 253, the effect of which is to limit the terminal date of the subsequent patent, if granted, so that it is coterminous with that of the prior patent.[24] "In summary, where there are in fact separate inventions, each of which is considered patentable over the prior art absent a patent over the other, a rejection *based upon double patenting* can be obviated by the filing of a terminal disclaimer under 35 U.S.C. § 253, which may be filed by a common assignee."[25] Here, following the rejection by the examiner of the 818 application, Vitau filed a disclaimer. Thereafter, the proceedings continued, and the 818 patent was eventually granted.

The defendants' position is that while the disclaimer had the effect of limiting the terminal date of the 818 patent, it did not overcome the fact that the publication and offering on sale of the rings employing the 245 teachings occurred more than one year prior to the 818 filing date, a fact not disclosed to the examiner. Consequently, defendants claim those teachings are prior

20. *Application of Braithwaite,* 54 C.C.P.A. 1589, 379 F.2d 594, 602 (C.C.P.A.1967) (Smith, J., concurring).

21. *Application of Kaye,* 51 C.C.P.A. 1465, 332 F.2d 816, 819 (C.C.P.A.1964). *See generally Application of Thorington,* 57 C.C.P.A. 759, 418 F.2d 528, 534 (C.C.P.A.1969), *cert. denied,* 397 U.S. 1038, 90 S.Ct. 1356, 25 L.Ed.2d 649 (1970) ("double patenting rejections usually take one or both of two forms, namely, the 'same invention' type 'double patenting' identifiable with the statutory provision 35 U.S.C. § 101, saying that an inventor may obtain a patent, interpreted as meaning only one patent; and the 'obviousness' type 'double patenting,' a judicially-created doctrine grounded in public policy rather than statute and primarily intended to prevent prolongation of monopoly by prohibiting claims in a second patent not patentably distinguishing from claims of a first patent. This court has held that a terminal disclaimer is ineffective where it is attempted to twice claim the same invention; however, an 'obviousness' type 'double patenting' rejection may be obviated by a terminal disclaimer."); *Application of Braithwaite,* 54 C.C.P.A. 1589, 379 F.2d 594, 601 (C.C.P.A.1967) (Smith, J., concurring); *B & J Mfg. Co. v. Hennessy Indus.,* 493 F.Supp. 1105, 1117–18 (N.D.Ill.1979), *aff'd,* 663 F.2d 1075 (7th Cir.), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 622 (1981). *See also Application of Dunn,* 52 C.C.P.A. 1760, 349 F.2d 433, 436 (C.C.P.A.1965); *Weatherhead Co. v. Drillmaster Supply Co.,* 227 F.2d 98, 102 (7th Cir.1955) (and cases cited therein); A. Deller, Walker on Patents § 62 at 306 (2d Ed.1964).

22. *Application of Robeson,* 51 C.C.P.A. 1271, 331 F.2d 610, 615 (C.C.P.A.1964). *See also Miller v. Eagle Mfg. Co.,* 151 U.S. 186, 197–98, 14 S.Ct. 310, 314–15, 38 L.Ed. 121 (1894); *McCreary v. Pennsylvania Canal Co.,* 141 U.S. 459, 467, 12 S.Ct. 40, 43, 35 L.Ed. 817 (1891); *Application of Skrivan,* 57 C.C.P.A. 1201, 427 F.2d 801, 803 (C.C.P.A.1970); *Application of Eckel,* 55 C.C.P.A. 1068, 393 F.2d 848 (C.C.P.A. 1968); *Application of Sui,* 42 C.C.P.A. 864, 222 F.2d 267, 270 n. 2 (C.C.P.A.1955).

23. *Application of Braithwaite,* 54 C.C.P.A. 1589, 379 F.2d 594, 602 (C.C.P.A.1967) (Smith, J., concurring) (emphasis in original). *See also Miller v. Eagle Mfg. Co.,* 151 U.S. 186, 197–98, 14 S.Ct. 310, 314–15, 38 L.Ed. 121 (1894); *McCreary v. Pennsylvania Canal Co.,* 141 U.S. 459, 467, 12 S.Ct. 40, 43, 35 L.Ed. 817 (1891); *Application of Griswold,* 53 C.C.P.A. 1565, 365 F.2d 834, 840 (C.C.P.A.1966). *See also* 35 U.S.C. § 101.

24. *See, e.g., Application of White,* 56 C.C.P.A. 870, 405 F.2d 904, 906 (C.C.P.A.1969); *Application of Wright,* 55 C.C.P.A. 1106, 393 F.2d 1001, 1005 (C.C.P.A.1968); *Application of Eckel,* 55 C.C.P.A. 1068, 393 F.2d 848, 854 (C.C.P.A. 1968); *Application of Braithwaite,* 54 C.C.P.A. 1589, 379 F.2d 594, 601 (C.C.P.A.1967); *Application of Robeson,* 51 C.C.P.A. 1271, 331 F.2d 610, 614 (C.C.P.A.1964).

25. *Application of Bowers,* 53 C.C.P.A. 1590, 359 F.2d 886, 892 (C.C.P.A.1966).

art references for purposes of judging the validity of the 818 patent under section 103. The argument continues that, because the examiner found the later patent obvious in light of the earlier one, it is invalid. In addition, defendants argue that the plaintiff's failure to disclose the date of publication of the 245 rings to the examiner was a material omission, in violation of the patentee's duty of candor to the PTO.[26]

■ Plaintiff responds that the 818 patent is not obvious in light of the 245. Plaintiff argues that no evidence was offered on this point. The examiner, however, took a contrary position on the issue of obviousness. Moreover, the file wrapper leaves no room to doubt that plaintiff admitted the obviousness of the later patent. Vitau did not exercise his right to contest this finding, and plaintiff is now estopped from arguing otherwise.[27] Thus, the narrow issue remaining is whether the rings using the 245 teachings are prior art references as against the 818. Plaintiff argues they are not, but without any authority. Reference to the case law discloses no single determinative citation. General principles, however, indicate that the defendants' position must be upheld.

■ The filing of a terminal disclaimer can overcome a rejection on grounds of double patenting of the obviousness type, a result noted above. In effect, the disclaimer renders the *pending application* "not 'prior art' under the terms of section 103."[28] In short, "[h]aving been copending with the [818] application ... [the 245] patent is *not* prior art although it *is* the basis of the double patenting rejection."[29] Here, plaintiff introduced the public to the 245 teachings by placing rings on sale in the market more than one year prior to the filing date of the 818 application. Under other circumstances, this would render them prior art references as to later filed applications—by anyone, including Vitau.[30] Thus, while plaintiff enjoys its monopoly over the invention embodied in the 245, its teachings are prior art. No case has squarely discussed the effect of the filing of a terminal disclaimer in these circumstances. In general, however, double patenting is a narrow, judicially created exception to the Patent Act. Accordingly, a terminal disclaimer "cannot ... obviate a rejection based on obviousness in view of prior art."[31]

**26.** *See* 37 C.F.R. § 1.56.

**27.** 37 C.F.R. § 1.132. *See Graham v. John Deere Co.,* 383 U.S. 1, 33, 86 S.Ct. 684, 701, 15 L.Ed.2d 545 (1968); *Schriber-Schroth Co. v. Cleveland Trust Co.,* 311 U.S. 211, 217, 220, 61 S.Ct. 235, 238, 239, 85 L.Ed. 132 (1940); *Narda Microwave Corp. v. General Microwave Corp.,* 675 F.2d 542, 549 (2d Cir.1982) (file wrapper estoppel "prevents a patentee from taking a position in the courts that contradicts the position he took in the Patent Office."); *Capri Jewelry, Inc. v. Hattie Carnegie Jewelry Enterprises, Ltd.,* 539 F.2d 846, 851 (2d Cir.1976); *Cohn v. Coleco Indus.,* 558 F.2d 53, 58–59 (2d Cir. 1977).

**28.** *Application of Braithwaite,* 54 C.C.P.A. 1589, 379 F.2d 594, 603 (Smith, J., concurring). *See also id.* 379 F.2d at 600 n. 4; *Application of Bowers,* 53 C.C.P.A. 1590, 359 F.2d 886, 891 n. 7 (C.C.P.A.1966); *Application of Zickendraht,* 50 C.C.P.A. 1529, 319 F.2d 225, 231 n. 4 (C.C.P.A.1963) (Rich, J., concurring).

**29.** *Application of White,* 56 C.C.P.A. 870, 405 F.2d 904, 906 (C.C.P.A.1969) (emphasis in original) (citing *Application of Eckel,* 55 C.C.P.A. 1068, 393 F.2d 848 (C.C.P.A.1968)).

**30.** 35 U.S.C. § 102(b); *Illinois Tool Works Inc. v. Solo Cup Co.,* 461 F.2d 265, 270 (7th Cir.), *cert. denied,* 407 U.S. 916, 92 S.Ct. 2441, 32 L.Ed.2d 691 (1972). *Accord, Frantz Mfg. v. Phenix Mfg.,* 457 F.2d 314, 320–21 (7th Cir. 1972); *Tool Research & Eng. Corp. v. Honcor Corp.,* 367 F.2d 449, 453 (9th Cir.1966), *cert. denied,* 387 U.S. 919, 87 S.Ct. 2032, 18 L.Ed.2d 972 (1967); *Application of Foster,* 52 C.C.P.A. 1808, 343 F.2d 980, 987–90 (C.C.P.A.1965), *cert. denied,* 383 U.S. 966, 86 S.Ct. 1270, 16 L.Ed.2d 307 (1966); *Dix Seal Corp. v. New Haven Trap Rock Co.,* 236 F.Supp. 914, 919–20 (D.Conn. 1964). *Cf. Hazeltine Research, Inc. v. Brenner,* 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965) (patent pending at time second application is filed is prior art as to later filed application). *See also Application of Bass,* 59 C.C.P.A. 1342, 474 F.2d 1276, 1290 (C.C.P.A.1973); *Deep Welding, Inc. v. Sciaky Bros.,* 417 F.2d 1227, 1233 (7th Cir.1969), *cert. denied,* 397 U.S. 1037, 90 S.Ct. 1354, 25 L.Ed.2d 648 (1970).

**31.** *Application of Fong,* 54 C.C.P.A. 1482, 378 F.2d 977, 979–80 n. 1 (C.C.P.A.1967) (citing *Application of Bowers,* 53 C.C.P.A. 1590, 359 F.2d 886 (C.C.P.A.1966). *Cf. Hays v. Brenner,* 357 F.2d 287 (D.C.Cir.1966) (terminal disclaim-

Moreover, giving a broader effect to a disclaimer would upset the statutory scheme. The patenting system is designed to foster the dual goals of rewarding inventiveness and encouraging future development.[32] Thus, anyone can freely market improvements over patented teachings so long as the improvements do not infringe on the patent. When it becomes reasonable to devote time and energy towards developing such improvements depends in part upon how the teaching was made known to the public. Under section 102(b), for example, once the teachings have been placed on sale, a party need only wait one year before reasonably investing in such an improvement without fear of infringing on another's patent: If the inventor has not filed a patent application within a year of placing the teaching on sale, he is foreclosed from obtaining a patent. Where the disclosure to the public only comes from the patent itself, the double patenting doctrine permits the same inventor to increase the scope of his monopoly so long as the original patent is still pending. Thus, the public may not reasonably invest in improvements until the patent issues, and after being satisfied that the inventor has not filed a second, related application.[33] Here, the rings employing the 245 teachings were placed on sale in July and August, 1978. No application containing the 818 teachings had been filed twelve months later. At that point, anyone was free to invest in, develop and market any obvious improvement over the 245, including that reflected in the 818. It is important to underscore that, in view of the examiner's findings and plaintiff's admission in the file wrapper, the 818 teachings would have been obvious in light of the 245 by anyone of ordinary skill in the art.

Thus, with the 245 in hand, the 818 could have been developed by others. Moreover, while as noted below defendants' conduct is to be condemned, a patent is valid or invalid as to the world. The issue, therefore, is not whether it would be fair to uphold the validity of the patent as against the defendant, but whether it would be fair to do so as against all others, the latter being an inquiry defined by statute. Accordingly, the Court holds that the rings on sale more than one year prior to the filing of the 818 application are prior art references. Because the 818 teachings are obvious in light of them, the patent is invalid under section 103.[34]

### C. INFRINGEMENT

In view of the invalidity of the 818 patent, the Court only considers the issue of infringement as to the 245. The evidence fails to disclose any such infringement. Indeed on two occasions Vitau himself testified that, upon viewing defendants' catalogue, he could find no infringing items.[35] Nevertheless, in its post trial submissions, plaintiff claims that thirteen items of jewelry in defendants' catalogue infringe on the 245. Although record citations are proffered, none supports plaintiff's claim. Even the close resemblance of the parties' jewelry to the Court's untrained eye is insufficient in light of Vitau's own testimony.[36] Thus, the Court concludes that plaintiff has failed to sustain its burden of proof on the issue of infringement of the 245 patent.

## II. COPYRIGHT INFRINGEMENT
### A. PROCEDURAL HISTORY

On March 30, 1981, Gemveto filed three applications for copyright with the United

---

er does not overcome objection to patentability based upon obviousness under section 103).

**32.** See, e.g., U.S. Const. art. I, § 8, cl. 8.

**33.** See generally Application of Zickendraht, 50 C.C.P.A. 1529, 319 F.2d 225, 232 (C.C.P.A.1963) (Rich, J., concurring).

**34.** This disposition renders the defendants' claim of fraud on the PTO as to the 818 application moot. Moreover, the Court finds that plaintiff's omission was not willful. Cf. Warner-Jenkinson Co. v. Allied Chemical Corp., 477

F.Supp. 371, 395–96 (S.D.N.Y.1979), aff'd without opinion, 633 F.2d 208 (2d Cir.1980).

**35.** Record at 101, 109–10.

**36.** Vitau also testified that it was "difficult" for him to determine which setting method was employed by examining a completed ring, as opposed to a model or a casting. Record at 59–60. Making this determination on the basis of a mere photograph is well nigh impossible.

States Register of Copyrights. These applications sought copyrights on three items of jewelry—a ring, an earring and a bracelet—as "expeditiously as possible . . . so as not to prejudice [Gemveto's] right to institute legal proceedings in order to obtain whatever preliminary injunction relief is available against the infringing activity of its competitor." [37] The Copyright Office responded three days later, on April 2, rejecting the application because the article "lack[ed] the sculptured authorship necessary to sustain a registration." [38] Rather than contest this determination, the applications were withdrawn. Plaintiff's counsel explained that:

> . . . We have discovered that the copyright applications identified above were erroneously submitted to the Copyright Office because the pieces were first sold without appropriate copyright notice. The photographs submitted accompanying the applications incorrectly portrayed the items as having been sold with tags on which a copyright notice was carried. In view of the earlier sales of these items without proper copyright notice, the prior copyright registration applications are hereby withdrawn.[39]

Six months later, plaintiff, represented by new counsel, filed applications for copyright for the same three articles. There was no mention of the prior rejection, the withdrawal of the applications, or the reason for the withdrawal. The applications did note, however, that the articles had been marked with the symbol "JV," "a trademark under which the applicant is widely known." [40] The applications again requested "special handling." [41] They received the same treatment from the Copyright Office as did the first group: all were rejected as "not copyrightable." [42]

### B. APPLICABLE STANDARDS

■ The rejection of the applications does not bar an infringement suit.[43] To succeed, however, plaintiff must establish that the items were properly subject to copyright.[44] That burden is heavy: the determinations of the Copyright Office, as with the PTO, are entitled to "considerable" weight.[45] That is especially so here where the same applications were rejected for the same reasons on two separate occasions, eight months apart.[46] Moreover, the deci-

---

**37.** Letter from Jeffrey Greenman to Register of Copyrights (March 30, 1981).

**38.** Letter from Frank Vitalos to Jeffrey Greenman (April 2, 1981).

**39.** Letter from Peter Berger to Frank Vitalos (May 18, 1981).

**40.** Letter from Thomas Morrison to Frank Vitalos (Nov. 13, 1981). Defendants contest the accuracy of this representation. The Court finds it unnecessary to resolve this issue, however.

**41.** *Id.*

**42.** Letter from Frank Vitalos to Thomas Morrison (Nov. 20, 1981).

**43.** 17 U.S.C. § 411(a).

**44.** "To prevail on a claim of copyright infringement, a plaintiff must show both ownership of a valid copyright and copying." *Knickerbocker Toy Co. v. Azrak-Hamway Int'l, Inc.,* 668 F.2d 699, 702 (2d Cir.1982) (citing *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.,* 558 F.2d 1090, 1092 (2d Cir.1977); *PPS, Inc. v. Jewelry Sales*

*Representatives, Inc.,* 392 F.Supp. 375, 381 (S.D.N.Y.1975).

**45.** *Esquire, Inc. v. Ringer,* 591 F.2d 796, 801 (D.C.Cir.), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1978) (and cases cited therein). *Cf. Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Eltra Corp. v. Ringer,* 579 F.2d 294 (4th Cir.1978); *Hoffenberg v. Kaminstein,* 396 F.2d 684 (D.C.Cir. 1968).

**46.** At trial, plaintiff offered evidence that the Copyright Office did register four of its items of jewelry that were submitted after the ones at issue here were rejected. Plaintiff argues that, by reason of the subsequent registrations, the Court should give less deference to the "initial" determinations of the Copyright Office. Plaintiff further contends that the initial rejections were due to the Copyright Office's "lack of awareness of changes in the industry." Plaintiff's Supplemental Post Trial Memorandum of Law at 33. There was no testimony adduced, however, as to the relationship between the registered works and those rejected—save that all were produced by Gemveto. Without more, the Court does not accept plaintiff's implicit proposition: to wit, that because some of his

sion to register an article rests in the sound discretion of the Register of Copyrights,[47] and the scope of judicial review is limited to whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." [48]

Defendants maintain that the alleged failure of plaintiff to properly place notice of copyright on the jewelry precludes registration. "[N]otice of copyright ... [must] be placed on all publicly distributed copies [of the articles]." [49] Under 17 U.S.C., section 405, however, the failure to properly mark publicly distributed articles "does not invalidate the copyright in a work if—

> ... (2) registration for the work ... is made within five years after the publication without notice, and a reasonable effort is made to add notice to all copies ... that are distributed to the public in the United States after the omission is discovered." [50]

Plaintiff argues, over defendants' strenuous objection, that a "reasonable effort" was made to properly mark the articles. The record discloses otherwise.

The articles in question were first put on sale in April of 1979. As stated above, the first registration application was filed in March of 1981—nearly two years later. Vitau equivocally testified that proper notices were affixed from the initial date of publication.[51] Other testimony, however, decidedly belies this statement. First, plaintiff could produce no corroboration for this assertion whatsoever, aside from Vitau's rec-

ollection. Second, Vitau claimed that the copyright notice had been stamped on the articles with a metal punch. However, (1) no bill of sale dating the time of purchase of the punch was produced, despite defendants' repeated requests therefore; (2) in July of 1981 plaintiff filed a trademark application for one of the two marks he claimed to have been always used together for copyright notice purposes,[52] and in that application, the first use of the mark anywhere was recited to be June 23, 1981; and (3) the photographs of the articles submitted to the Copyright Office did not have any stamped copyright notice; rather, printed adhesive tags reading "© 1979 Gemveto" were affixed thereto. Third, Vitau testified that, as a "general rule," [53] the copyright notice was stamped on all items of Gemveto jewelry. If so, it is incredible that of the three pieces of jewelry selected for copyright registration—and as to which plaintiff requested expedited treatment— not a single one bore a copyright stamp. Finally, there is the letter from plaintiff's former counsel that, rather than contesting the Copyright Office's initial rejection, he was withdrawing the application because of the failure to properly mark the articles with copyright notices. In sum, the Court finds that at least as of the time of the filing of the March applications, plaintiff had failed to properly affix copyright notices.

After acknowledging its failure to properly give notice of its copyright claim under

---

works were registered, the Copyright Office's decision to reject others should not be deferred to.

**47.** *See* 17 U.S.C. § 410(a); *Bailie v. Fisher,* 258 F.2d 425, 426 (D.C.Cir.1958) (per curiam); *Bouve v. Twentieth Century-Fox Film Corp.,* 122 F.2d 51, 52–53 (D.C.Cir.1941); *Public Affairs Assoc., Inc. v. Rickover,* 268 F.Supp. 444, 448 (D.C.Cir.1967); 2 M. Nimmer, Copyrights, § 7.21[A] (1982).

**48.** 5 U.S.C. § 706. *See* 17 U.S.C. § 701(d).

**49.** 17 U.S.C. § 401(a).

**50.** 17 U.S.C. § 405(a)(2). There is no claim that only a small number of items were unmarked, or that an express written agreement

to mark them had been violated. *See* 17 U.S.C. § 405(a)(1), (3).

**51.** *Compare* Record at 1112 (goods marked with "© JV" for six years), *with* Record at 167 (not aware if jewelry had copyright notice). *See also* Plaintiff's Post Trial Proposed Findings of Fact and Conclusions of Law ¶ 104 ("pieces contained [copyright] notification from April 2, 1979, the date of the first publication, but in no event later than approximately May 18, 1981.").

**52.** Vitau testified that Gemveto jewelry was stamped with "© JV" as a copyright notice. Record at 1099.

**53.** Record at 1130.

section 401(a), plaintiff continued to be remiss. Rather than take immediate action, plaintiff waited more than six months before filing a second application in which it represented that proper notice appeared on all items, as section 401 requires. This delay occurred in the face of a pending lawsuit against defendants [54] herein in which plaintiff eventually accused defendants of copyright infringement. Thus, with strong incentive to file for registration as soon as proper notice was affixed, plaintiff allowed six months to transpire before resubmitting the applications. The Court can only infer that were proper notice affixed earlier, the filing of the applications would not have been so long delayed. Additionally, in midsummer, plaintiff informed one of its customers that defendants were violating its copyrights, though admitting that "some Gemveto works may have been distributed without copyright notice." [55] The letter continued that a further "letter confirming Gemveto's compliance with 17 USC 405(a)(2) will be sent to you shortly." [56] No such letter was ever sent, however. Finally, there is the trademark application that represents June 23, 1981, to be the first time the copyright mark "JV," which Vitau claimed was an integral part of the copyright notice, was ever used. Thus, while admittedly on notice of its failure, plaintiff did not comply with the notice requirements of Title 17 for, at a minimum, several

months. Moreover, there is reason to believe that plaintiff was aware of the obligation to properly affix notices of its copyright claim as early as 1979.[57]

Viewing the evidence as a whole, the Court finds that plaintiff (a) failed to comply with the notice requirement of section 401, and (b) failed to make a reasonable effort to rectify the omission.[58] Accordingly, the Court holds that plaintiff is precluded from registering the articles in question, and dismisses plaintiff's claim for infringement.[59] This conclusion makes it unnecessary to reach defendants' other arguments on this point.

## III. LANHAM ACT CLAIMS

Plaintiff's third cause of action is for trademark infringement and unfair competition under the Lanham Act. Section 43(a) of that act "created a new federal cause of action for false representation as to the origin of goods where commerce is thereby affected." [60] Registration of the work is not a prerequisite to suit.[61] Rather, "[a] claim for relief arises if the defendant affixes to the goods a false designation of origin or any false description or representation." [62] Ultimately, plaintiff has the burden of proving that defendants' use of its alleged mark is "likely to cause confusion or to deceive purchasers as to the

---

**54.** The original complaint in this action was filed on June 4, 1981. It solely alleged a claim of unfair competition. Less than one month after the Copyright Office rejected registration for the second time, the complaint was amended to add, inter alia, a cause of action for copyright infringement.

**55.** Letter from Peter Berger to Irving Getz (July 8, 1981).

**56.** *Id.*

**57.** *See* Record at 397–98, 1138 (plaintiff stamped pieces sold to customer with "c Tiffany's"). *See also* M. Nimmer, Copyright, § 7.13[B][3] (1982) (deliberate failure renders § 405(a)(2) unavailable).

**58.** *Cf. P. Kaufman, Inc. v. Rex Curtain Corp.,* 203 U.S.P.Q. 859, 860 (S.D.N.Y.1978) ("very prompt steps to remedy omission"). *See also*

note 44 *supra* (burden of proving validity of copyright is on plaintiff).

**59.** By failing to properly mark the articles, plaintiff placed them in the public domain, forfeiting its right to copyright them. *See* 2 M. Nimmer, Copyright, § 7.14[A] (1982).

**60.** *Apollo Distrib. Co. v. Apollo Imports Inc.,* 341 F.Supp. 455, 458 (S.D.N.Y.1972) (footnotes omitted) (and cases cited therein).

**61.** 15 U.S.C. § 1127; *Appollo Distrib. Co. v. Apollo Imports Inc.,* 341 F.Supp. 455, 458 (S.D. N.Y.1972); *Mortellito v. Nina of California, Inc.,* 335 F.Supp. 1288, 1294 (S.D.N.Y.1972); *Glen v. Advertising Publications, Inc.,* 251 F.Supp. 889, 902 (S.D.N.Y.1966).

**62.** *Mortellito v. Nina of California, Inc.,* 335 F.Supp. 1288, 1294 (S.D.N.Y.1972).

source of origin of the goods."[63] In order to meet this burden, plaintiff must show that the feature sought to be protected (1) is "nonfunctional," and (2) enjoys a "secondary meaning."[64]

What plaintiff seeks to protect here is the Gemveto "style" of jewelry design, often interchangeably referred to as "GemLok."[65] Although much of the two weeks of testimony, and 1600 pages of the record, was devoted to defining what the Gemveto style was, no definition of any precision emerged. A canvassing of the descriptions given by various witnesses amply demonstrates the degree of disharmony. The only description one expert could provide is that he knew Gemveto pieces when he saw them.[66] Others explained the identifying characteristics of Gemveto jewelry to be the combination of the setting and the "overall look."[67] Still others, though by far the majority, wholly equated the Gemveto look with Vitau's settings.[68] Plaintiff's counsel admits that the settings are a large part of the identifiable Gemveto style, but urges that other aspects, such as the stones that are chosen and the jewelry configurations, are what make Gemveto jewelry so distinctive that they readily identify Gemveto as the creator. Defendants contend that the "other aspects" are simply inherent attrib-

utes of jewelry making, and the only identifiable characteristic of Gemveto jewelry is their settings.

The Court accepts the testimony of the majority of witnesses who clearly identified the Gemveto style or GemLok as referring to plaintiff's methods of setting stones. Vitau himself admitted that "all [his] designs revolved around the setting."[69] Similarly, plaintiff's former sales manager, Leonard Gottlieb, testified that GemLok identified the settings.[70] Plaintiff's sales representative Ivan Bass testified to the same effect.[71] Moreover, Gemveto's advertisements in trade journals and elsewhere consistently referred to the "no prong GemLok setting" —often without mentioning Gemveto itself. Thus, it is not surprising that plaintiff's customers equated the Gemveto style with "the way the stones are set."[72] For example, Harold Tivol answered the question "What it is that you look for when you examine a piece of jewelry to draw the conclusion that it is a Gemveto design?" with the following:

> I don't know any other piece of jewelry that is set the same way.... I had never seen another stone set the same way.[73]

Thus, every attempt to identify the jewelry as a distinctive product of the plaintiff is

---

63. Id.

64. See Vibrant Sales, Inc. v. New Body Boutique, Inc., 652 F.2d 299, 303 (2d Cir.1981), cert. denied, 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982); Ives Laboratories, Inc. v. Darby Drug Co., 601 F.2d 631, 642–43 (2d Cir.1979), quoting Pagliero v. Wallace China Co., 198 F.2d 339, 343 (9th Cir.1952); Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 299 (2d Cir.1917). See also Truck Equip. Service v. Freuhauf Corp., 536 F.2d 1210, 1215 (8th Cir.), cert. denied, 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976).

65. "GemLok" is a registered trademark of Gemveto. As previously noted, so is "JV."

66. See Record at 772 ("There is something about the piece and there is something about a Gemveto piece that I recognize it.... It is the way the stones are aligned. It is all sorts of things that you look for.") (testimony of Harold Tivol).

67. See, e.g., Record at 823 ("Just by the look, the way the diamonds are set and the look of

the piece") (testimony of Robert Haltom); Record at 942 (testimony of Sumner Dorfman); Record at 1009 (testimony of Bruce Weber).

68. See, e.g., Record at 728 (testimony of Eric Townsend); Record at 823, 824–25, 827 (testimony of Robert Haltom); Record at 974 (testimony of Sumner Dorfman); Record at 1009 (testimony of Bruce Weber); Record at 70 (testimony of Jean Vitau); Record at 1335–40 (testimony of Leonard Gottlieb); Record at 558 (testimony of Ivan Bass).

69. Record at 66.

70. Record at 1335–40.

71. Record at 558.

72. See, e.g., Record at 823, 824–25, 827 (testimony of Robert Haltom).

73. Record at 771.

hinged basically to a single aspect, the setting; whether based upon the teachings of the 245 or 818 patents. Accordingly, the Court concludes that the identifiable feature of the plaintiff's products are their settings.

The controversy over the precise characterization of the Gemveto style is critical to plaintiff's ultimate success on this claim. If the settings are functional, they are not protected under the Lanham Act. The characterization is a question of fact to be resolved by reference to the applicable law.[74] A feature is "functional" for purposes of the Lanham Act if it connotes other than a trademark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made. Under such circumstances, since effective competition may be undertaken without imitation, the law grants protection.[75]

The settings here are, without question, functional. First, they are directly related to the physical requirements essential to commercial success. Some setting must be employed, of course, if the jewelry is to contain gems; and the testimony is clear that the settings themselves are in large part responsible for the commercial success of plaintiff's jewelry. Naturally, other factors also contribute to plaintiff's success, such as the high quality of the stones it uses, and the excellence of its workmanship. Defendants, apparently, cannot match this quality. However, "[e]ven if purely functional elements are slavishly copied, the resemblance will not support an action for unfair competition" under the Lanham Act.[76]

Second, policy considerations counsel against Lanham Act protection for the settings. "Public acceptance of a functional feature as an indication of source is . . . not determinative of right to register. Preservation of freedom to copy 'functional' features is the determinating factor."[77] Plaintiff's use of the heretofore patented setting method, for example, may have caused expert jewelers and others to believe the origin of such jewelry to be Gemveto's shop.[78] This belief as to source was "not because of any distinctive, unique or non-functional mark or feature but because plaintiff's product was the only one with which they were acquainted, due undoubtedly to plaintiff's advertising. This is not enough to entitle plaintiff to relief under § 43(a) of the Lanham Act."[79]

There are several examples where de-

---

**74.** *Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d 769, 775 (9th Cir.1981); *In re Morton-Norwich Prods.,* 671 F.2d 1332, 1340 (C.C.P.A.1982); *Ives Laboratories, Inc. v. Darby Drug Co.,* 601 F.2d 631, 643 (2d Cir.1979).

**75.** *Ives Laboratories, Inc. v. Darby Drug Co.,* 601 F.2d 631, 643 (2d Cir.1979) (*quoting Pagliero v. Wallace China Co.,* 198 F.2d 339, 343 (9th Cir.1952)). *See also Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d 769, 773 (9th Cir.1981); *Damn I'm Good, Inc. v. Sakowitz, Inc.,* 514 F.Supp. 1357, 1360 (S.D.N.Y.1981); *Le Sportsac, Inc. v. Dockside Research, Inc.,* 478 F.Supp. 602, 606–07 (S.D.N.Y.1979); *PPS, Inc. v. Jewelry Sales Representatives, Inc.,* 392 F.Supp. 375, 383 (S.D.N.Y.1975) ("nonessential elements").

**76.** 3 R. Callman, Unfair Competition Trademarks and Monopolies, § 77.4(e)(1) at 388 (3d ed. 1969).

**77.** *Application of Deister Concentrator Co.,* 48 C.C.P.A. 952, 289 F.2d 496, 504 (C.C.P.A.1961).

**78.** This close identification can be explained, at least in part, because the 818 patent gave Gemveto a monopoly over that setting. Hence, one could say with substantial certainty that a fine quality item of jewelry made with the 818 setting method was a Gemveto product.

**79.** *Vibrant Sales, Inc. v. New Body Boutique, Inc.,* 652 F.2d 299, 305 (2d Cir.1981), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1257, 71 L.Ed.2d 448 (1982).

fendants copied[80] not merely plaintiff's setting techniques, but virtually all other aspects of a particular item of Gemveto jewelry.[81] Indeed, the only distinction between two products seemed to be that defendants' were of decidedly lower quality; hence, they were referred to as "knock-offs."[82] This is a form of plagiarism—a slavish copying of a well-marketed product. As to these copies, however, there was no proof that any Gemveto item had acquired a secondary meaning—aside from that attributed to the settings. Thus, the Court is constrained to dismiss plaintiff's Lanham Act claims, too. It does so with some reluctance because it is clear that defendants have appropriated much of what it has taken Vitau years to develop. But the apparent inequity as between the parties is to be balanced against the utilitarian approach taken by the act as a whole.[83] As Judge Medina explained:

[A]t first glance it may seem intolerable that one manufacturer should be allowed to sponge on another by pirating the product of years of invention and development without license or recompense

and reap the fruits sown by another. Morally and ethically such practices strike a discordant note. It cuts across the grain of justice to permit an intruder to profit not only by the efforts of another but at his expense as well.

But this initial response to the problem has been curbed in deference to the greater public good.... For imitation is the life blood of competition. It is the unimpeded availability of substantially equivalent units that permits the normal operation of supply and demand to yield the fair price society must pay for a given commodity.... [T]he bare imitation of another's product, without more, is permissible. And this is true regardless of the fact that the courts have little sympathy for a wilful imitator.[84]

## IV. STATE LAW CLAIMS

### A. COMMON LAW UNFAIR COMPETITION

■ Some of defendants' pieces, aside from their lower quality, are mirror images of Gemveto's. This results from more than

**80.** It is inconceivable that defendants produced some, if not most, of their jewelry without substantial guidance from Gemveto products. As noted above, Cooper had little experience in jewelry design, while Vitau had substantial training, and was a recognized expert. Indeed, Robert Haltom testified that the "odds would be 50,000 to one that [Cooper] could independently come up with that, with those designs." Record at 821–22. *See also* Record at 762–63 (testimony of Harold Tivol).

**81.** Even here, however, there is an important difference: Gemveto stamps its pieces with its registered trademark "JV"; defendants stamp their pieces with Cooper's initials "JC." *See* Record at 1147; note 52, *supra*. *Cf. Bose Corp. v. Linear Design Labs, Inc.,* 467 F.2d 304, 310 (2d Cir.1972).

**82.** *See, e.g.,* Record at 580 (testimony of Kenneth Rockmore); Record at 761, 763 (testimony of Harold Tivol); Record at 1036–38 (testimony of Dominick Pompillonia).

**83.** *See, e.g., In re Water Gremlin Co.,* 635 F.2d 841, 844 (Cust. & Pat.App.1980); *Application of Deister Concentrator Co.,* 48 C.C.P.A. 952, 289 F.2d 496, 504 (C.C.P.A.1961). As Judge

Rich explained in *In re Morton-Norwich Prods.,* 671 F.2d 1332, 1336–37 (Cust. & Pat.App.1982):

[T]here exists a fundamental right to compete through imitation of a competitor's product, which right can only be *temporarily* denied by the patent or copyright laws:

If one manufacturer should make an advance in effectiveness of operation, or in simplicity of form, or in utility of color; and if that advance did not entitle him to a monopoly by means of a machine or process or a product or a design patent; and if by means of unfair trade suits he could shut out other manufacturers who plainly intended to share in the benefits of unpatented utilities ... he would be given gratuitously a monopoly more effective than that of the unobtainable patent in the ratio of eternity to seventeen years.

(*quoting Pope Automatic Merchandising Co. v. McCrum-Howell, Co.,* 191 F. 979, 981–82 (7th Cir.1911)). *See also Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 122, 59 S.Ct. 109, 115, 83 L.Ed. 73 (1938) (Brandeis, J.); *Chas. D. Briddell, Inc. v. Alglobe Trading Corp.,* 194 F.2d 416, 418 (2d Cir.1952) (Frank, J.).

**84.** *American Safety Table Co. v. Schrieber,* 269 F.2d 255, 271–72 (2d Cir.), *cert. denied,* 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185 (1959).

simply the use of a Vitau setting method. Instead, the cause of this similarity is the exact duplication of plaintiff's jewelry, from the number of stones, the stones' color, their alignment, size and shape. Under the common law of New York, deliberate use of a competitor's non-functional[85] marks or tradedress is actionable. There need be no showing of secondary meaning as with the Lanham Act. Rather, the issue is "whether or not the public is likely to be confused."[86]

██ Because the Court finds that defendants intentionally copied plaintiff's products, injunctive relief will lie. Where there is "intentional copying the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded."[87] Here there is no question that Cooper intentionally copied Gemveto's jewelry. In addition to the considerable testimony from jewelry experts to the effect that Cooper could not have developed a line of jewelry so strikingly similar to Gemveto's by accident,[88] one specific example surfaces. At one point in 1978, Gemveto decided to place an ad in a trade journal. In preparation for publication, two drawings of the same Gemveto necklace were produced by an advertising agency. Plaintiff selected one and had it published. Three years later the other

drawing appeared in a trade journal in which it was represented to depict one of defendants' pieces.[89] There is no testimony as to how defendants came upon the second drawing; that they published an exact duplicate of plaintiff's previously prepared advertisement, representing the latter as their own jewelry however, along with the other testimony noted above, is sufficient for the Court to hold that intentional copying occurred. In fact, this record amply supports plaintiff's claims that many of defendants' items offered for sale were "knock-offs." Accordingly, plaintiff is entitled to injunctive relief.

██ Plaintiff is not entitled to an accounting or an award of monetary damages, however. Such relief is only available upon proof that defendants' conduct with respect to non-functional designs led to actual confusion among the public. Although plaintiff adduced evidence of actual confusion—from salesmen, retail customers and the general public—the evidence did not establish the basis of the confusion; whether it was defendants' use of plaintiff's functional settings, or whether the copying of the non-functional designs led to confusion. Plaintiff has the burden of proof on this issue and the Court finds that it has failed to meet it.[90]

**85.** See Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). Compare Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 204 (2d Cir.1979); Ives Laboratories, Inc. v. Darby Drug Co., 601 F.2d 631, 642 (2d Cir.1979); Ronson Art Metal Works v. Gibson Lighter Mfg. Co., 3 A.D.2d 227, 159 N.Y.S.2d 606, 608 (1st Dep't 1957).

**86.** Perfect Fit Indus. v. Acme Quilting Co., 618 F.2d 950, 952–53 (2d Cir.1980), cert. denied, —— U.S. ——, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982); Harlequin Enterprises, Ltd. v. Gulf & Western Corp., 644 F.2d 946, 950 (2d Cir.1981); Allied Maintenance Corp. v. Allied Mechanical Trades, Inc., 42 N.Y.2d 538, 543, 399 N.Y.S.2d 628, 631, 369 N.E.2d 1162, 1165 (1977).

**87.** Perfect Fit Indus. v. Acme Quilting Co., 618 F.2d 950, 954 (2d Cir.1980), cert. denied, —— U.S. ——, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982)

(and cases cited therein); Harlequin Ent. Ltd. v. Gulf & Western Corp., 644 F.2d 946, 949 (2d Cir.1981) (and cases cited therein); Commerce Foods, Inc. v. PLC Commerce Corp., 504 F.Supp. 190, 193 (S.D.N.Y.1980).

**88.** See note 80, supra.

**89.** Record at 488–90.

**90.** Perfect Fit Indus. v. Acme Quilting Co., 618 F.2d 950, 955 (2d Cir.1980), cert. denied, —— U.S. ——, 103 S.Ct. 73, 74 L.Ed.2d 71 (1982); G.H. Mumm Champagne v. Eastern Wine Corp., 142 F.2d 499, 501 (2d Cir.1944) (L. Hand, J.); DC Comics, Inc. v. Filmation Assoc., 486 F.Supp. 1273, 1279 (S.D.N.Y.1980); Michel Cosmetics, Inc. v. Tsirkas, 282 N.Y. 195, 202, 26 N.E.2d 16 (1940) (Lehman, J.); Ronson Art Metal Works v. Gibson Lighter Mfg. Co., 3 A.D.2d 227, 159 N.Y.S.2d 606, 610–11 (1st Dep't 1957); Harsam Distributors, Inc. v. Sobel, 15 Misc.2d 776, 181 N.Y.S.2d 881, 884 (Sup.Ct.N.Y.Co.1958).

## B. STATUTORY CLAIMS

Plaintiff also alleges causes of action for injunctive relief under sections 133 and 368–d of the New York General Business Law. The relief afforded by these provisions in the circumstances presented in this case, however, are no greater than that afforded by the common law.[91] Since the plaintiff is entitled to an injunction under its common law claims, there is no point in determining whether that injunction is also authorized under the statutory provisions.[92]

## V. DEFENDANTS' COUNTERCLAIMS

■ Defendants have raised two counterclaims for which they seek monetary relief: one for unfair competition, and the other for libel. The latter arises from a statement contained in the original complaint—that Cooper was a "47th Street knock-off artist"—but was omitted from the amended complaint. Even assuming that such a claim would survive in the face of the amendment to the pleading,[93] defendants have failed to prove essential elements of a libel action.[94] Moreover, as above noted, the evidence warrants a finding, based upon testimony other than Vitau's, that the term correctly described de-fendants' activities with respect to a substantial number of plaintiff's products. Thus, it is dismissed. The counterclaim for unfair competition is similarly dismissed. The basis for this claim is that plaintiff threatened defendants' customers with lawsuits that it allegedly knew were meritless, and that plaintiff has filed "multiple" lawsuits against defendants. As to the former, there is absolutely no proof that plaintiff "knew"[95] that its patent and copyright claims were "meritless." Moreover, the filing of two suits against defendants, each of which alleged infringement of different patents, does not constitute unfair competition.[96] The assertion by the defendants of these claims against plaintiff who was trying to protect its patents against defendants' unethical conduct "is an outstanding example of *chutzpah* to the nth degree."[97] The Court, however, does grant defendants' request for a declaratory judgment to the extent that the 818 patent is declared invalid, and the ring, earring and bracelet are denied copyright protection.

## VI. CONCLUSION

The Court finds that plaintiff has established the validity of the 245 patent but has

**91.** In specific, neither of these provisions affords relief for defendants' appropriation of the functional features of plaintiff's jewelry. *See, e.g., Damn I'm Good, Inc. v. Sakowitz, Inc.,* 514 F.Supp. 1357, 1363 & n. 22 (S.D.N.Y.1981); *PPS, Inc. v. Jewelry Sales Representatives, Inc.,* 392 F.Supp. 375, 383–84 (S.D.N.Y.1975); *Ronson Art Metal Works v. Gibson Lighter Mfg. Co.,* 3 A.D.2d 227, 159 N.Y.S.2d 606, 608 (1st Dep't 1957).

**92.** *But cf. Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.,* 42 N.Y.2d 538, 545, 399 N.Y.S.2d 628, 632, 369 N.E.2d 1162, 1166 (1977) (must show secondary meaning to recover under § 368–d); *Association of Contracting Plumbers of the City of New York, Inc. v. Contracting Plumbers Ass'n of Brooklyn & Queens,* 302 N.Y. 495, 502, 99 N.E.2d 542 (1951) (may need to show secondary meaning to recover under § 133). *Accord Charles F. Ryan & Son, Inc. v. Lancaster Homes, Inc.,* 22 A.D.2d 186, 254 N.Y.S.2d 473, 478 (4th Dep't 1964) (per curiam), *aff'd,* 15 N.Y.2d 812, 257 N.Y.S.2d 934 (1965).

**93.** The filing of an amended complaint renders the original "*functus officio.*" *Phillips v. Murchison,* 194 F.Supp. 620, 622 (S.D.N.Y.1961).

**94.** To succeed in a libel action, defendants must establish, *inter alia,* that the statement was false. *Fairley v. Peekskill Star Corp.,* 83 A.D.2d 294, 445 N.Y.S.2d 156 (2d Dep't 1981).

**95.** *Cf. Decorative Cabinet Corp. v. Stor-Aid of Ohio,* 10 F.R.D. 266 (S.D.N.Y.1950) (Rifkind, J.).

**96.** Plaintiff had brought a second action alleging infringement by the defendants of the patent granted to Vitau's uncle, and assigned to Gemveto. *Gemveto v. Cooper,* 82 Civ. 48 (RJW) (S.D.N.Y.). There is no authority supporting the claim that merely by bringing these two suits, plaintiff is subject to an unfair competition claim. *Cf. Plymouth Rubber Co. v. Minnesota Mining & Mfg. Co.,* 203 F.Supp. 595 (D.Mass.1962), *modified on other grounds,* 321 F.2d 151 (1st Cir.1963), *cert. denied,* 375 U.S. 969, 84 S.Ct. 489, 11 L.Ed.2d 417 (1964).

**97.** *Weir v. United States,* 200 Ct.Cl. 501, 474 F.2d 617, 620 (Ct.Cl.), *cert. denied,* 414 U.S. 1066, 94 S.Ct. 574, 38 L.Ed.2d 471 (1973).

failed to establish infringement of it; that the 818 patent is invalid; that plaintiff may not recover under the Lanham Act; and that plaintiff is entitled to an injunction under the common law. The Court also dismisses defendants' counterclaims for monetary relief, and grants their request for a declaration that the ring, bracelet and earring are not subject to copyright protection. The request of both sides for counsel fees is denied.[98]

The foregoing shall constitute the Court's Findings of Fact and Conclusions of Law.

Submit order.

---

**98.** *See Bussemer v. Artwire Creations, Inc.,* 231 F.Supp. 798, 805 & n. 30 (S.D.N.Y.1964). *Accord Louis Marx & Co. v. Buddy L Corp.,* 453 F.Supp. 392, 398–400 (S.D.N.Y.1978); *Eastern Electric, Inc. v. Seeburg Corp.,* 310 F.Supp. 1126, 1152 & n. 96 (S.D.N.Y.1969), *aff'd,* 427 F.2d 23 (2d Cir.1970); *Indiana General Corp. v. Krystinel Corp.,* 297 F.Supp. 427, 449 (S.D.N.Y. 1969), *aff'd,* 421 F.2d 1023 (2d Cir.), *cert. denied,* 398 U.S. 928, 90 S.Ct. 1820, 26 L.Ed.2d 91 (1970).